Clifford F. MACK and Helen L. Mack, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 20098.

United States Court of Appeals, Sixth Circuit.

July 20, 1970.

Clifford F. Mack, in pro. per.

Richard Farber, Dept. of Justice, Washington, D. C., for respondent-appellee; Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, William A. Friedlander, Attys., Dept. of Justice, Washington, D. C., on the brief.

Before PECK and BROOKS, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

This cause is before the Court on the appeal of Clifford F. Mack and his wife from a judgment of the Tax Court which, for the tax year of 1964, reduced his claim of wagering losses from an asserted $27,200 to $14,000. As provided in 26 U.S.C. § 165(d), a taxpayer may claim deduction for wagering losses "only to the extent of the gains from such transactions." Appellants also challenge the propriety of a 5% negligence penalty imposed upon the amount of the appellants' underpayment of income tax for the year 1964. This is provided by 26 U.S.C. § 6653(a). The Commissioner had disallowed the full $27,200 claimed as wagering losses, but upon redetermination, the Tax Court allowed the sum of $14,000 for such claimed losses.

Prior to a 1962 accident which seriously disabled him, taxpayer, Clifford F. Mack, was a hard working mechanic, a resident of Dearborn Heights, Michigan. With the help of a frugal wife he had become a man of substance, and remained so until the crippling accident of 1962.

"While he was at home, disabled from his accident, friends took him to local racetracks for entertainment. He had wagered on the outcome of races only rarely prior to his accident but, as a result of the visits to the racetrack

while disabled, he became interested in racetrack gambling and attended racing meets almost daily during 1964, wagering heavily." (Tax Court Opinion filed February 4, 1969. T.C. Memo 1969—Docket No. 5195–67).

During 1964, Mack was receiving workmen's compensation benefits; his wife operated a beauty parlor, earning a net taxable income of $2,550.93. He claimed that he and his wife lived off of such benefits and earnings.

■ On a day in 1964, Mack won the sum of $48,555.40 on a single bet. The track withheld $7,283.26 for tax purposes and paid over to him $41,272.15. No purpose would be served by our attempting to set out Mack's method of computing his total losses for the year. It was a reverse net worth scheme whereby he set out monies deposited by him in various bank accounts during the year, and then showed the balances in these bank accounts on December 31, 1964. The total by which the bank accounts were reduced was $24,185.17, asserted to represent wagering losses. The Tax Court was of the view that it was not a true method of computing his losses. So are we. However sincere the taxpayers may have been in attempting to prove their losses, it is impossible to understand their method or to accept its results as truly portraying Mack's losses. He admitted that he had winnings other than those represented by bank deposits, but said that those were offset by unidentified losses. He claimed that none of the money that came out of bank accounts was used for living expenses so that it must all have been consumed by his losses at the track. This was so, he said, because he and his wife lived on her modest beauty shop earnings and his workmen's compensation benefits. The Tax Court doubted this, especially in view of a six weeks trip to Florida during the tax year involved.

■ Taxpayer did produce cancelled checks for $10,000 which had been cashed at the Detroit Race Course and the Tax Court indulged in the assumption that he probably lost that amount. The Tax Court also speculated that he likely had lost more than the amount of the checks and arbitrarily adopted and allowed an additional $4,000 to come to its figure of $14,000. This calculation was a finding of fact and not being able to say that it was clearly erroneous, we are foreclosed from interfering. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 289–291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960).

■ The burden of proving the correct amount of a claimed deductible loss was upon the taxpayer. Burnet v. Houston, 283 U.S. 223, 227, 51 S.Ct. 413, 75 L.Ed. 991 (1931); this rule applies to gambling losses sought to offset gambling winnings. Donovan v. Commissioner of Internal Revenue, 359 F.2d 64, 65 (1st Cir. 1966). That the Tax Court did allow $14,000 was a testament to the persuasiveness and seeming integrity of these taxpayers, who appeared pro se throughout these proceedings.

■ We will not disturb the Tax Court's assessment of the negligence penalty. The failure of taxpayer to keep contemporaneous records of track activities could properly be labeled as negligence. Marcello v. Commissioner of Internal Revenue, 380 F.2d 499, 506–507 (5th Cir. 1967); Marcello v. Commissioner of Internal Revenue, 380 F.2d 509, 511 (5th Cir. 1967). We so held in Wexler v. Commissioner of Internal Revenue, 241 F.2d 304 (6th Cir. 1957) where Judge Allen said:

"Petitioner's failure to keep records on the purchase price of horses for his racing stable clearly constituted negligence and authorized a penalty * * *." 241 F.2d at 305.

The circumstances of racetrack betting, like other gambling, constitutes no excuse for failure to keep adequate records, however innocent the carelessness.

The judgment of the Tax Court is affirmed.