Carol B. Manzo v. Commissioner.
Manzo v. Commissioner
Docket No. 4383-68.
United States Tax Court
T.C. Memo 1972-142; 1972 Tax Ct. Memo LEXIS 116; 31 T.C.M. (CCH) 714; T.C.M. (RIA) 72142; June 29, 1972, Filed. Anthony F. Barone, 4400 Palm Lane, Miami,fla., for the petitioner. Andrew H. Weinstein, for the respondent. STERRETT
Memorandum Findings of Fact and Opinion STERRETT, Judge: Respondent determined a deficiency in petitioner's Federal income tax and an addition to tax in the following amounts: Addition to
Tax under
Year
Deficiency
Sec. 6653(a) [1]
1965
$24,968.51
$1,248.42
Due to concessions, the issues remaining for adjudication are: 1. Whether petitioner is entitled to a deduction for gambling losses on alleged horse race bets made during 1965. 2. Whether petitioner received unreported income in 1965 from *117 gambling in the amount of $3,600. 715 3. Whether any part of the asserted deficiency is due to negligence or intentional disregard of rules and regulations. Findings of Fact Some of the facts have been stipulated. The stipulation together with the exhibits attached thereto are incorporated herein by this reference. Petitioner is Carol B. Manzo, whose legal address was Miami, Florida, as of the date her petition was filed with the Tax Court. Her Federal income tax return for the taxable year 1965 was filed with the district director of internal revenue at Jacksonville, Florida. Petitioner reported gross income on her 1965 Federal income tax return of $46,839.19. Five hundred and thirty-two dollars and ninety-nine cents of this amount represented salary and tips earned as a cocktail waitress. The remainlng $46,306.20 was the income realized on her winning a $2.00 twin double bet at Detroit Race Course, Inc., Livonia, Michigan, on October 6, 1965. She substantially offset the race track winnings by deducting $39,896, alleged to be gambling losses. Petitioner produced numerous losing tickets and their comparable racing programs which she asserts substantiate the claimed *118 gambling losses. Such losing tickets total $43,026 rather than the $39,896 claimed as a deduction on her return. Included within the tickets introduced at trial were $3,600 of winning tickets which petitioner failed to include on her 1965 Federal income tax return. Both the winning and losing wagers were specifically noted in the appropriate program. Such amounts may be reflected as follows: 716 HORSE RACE WINNINGS--1965
Date
Race Track
Specials
1st Race
2ndrace
Oct. 5
Detroit
$46,306.20
Nov. 20
Aqueduct - N.Y.
Nov. 23
Aqueduct - N.Y.
Nov. 29
Aquecuct - N.Y.
Dec. 6
Pimlico - Md.
Dec. 9
Pimlico - Md.
Total Winnings
HORSE RACE LOSSES--1965
Nov. 1
Aqueduct - N.Y.
$ 200.00
Nov. 19
Aqueduct - N.Y.
100.00
Nov. 20
Aqueduct - N.Y.
490.00
$900.00
2 ,,700.00
Nov. 22
Aqueduct - N.Y.
250.00
Nov. 23
Aqueduct - N.Y.
700.00
850.00
200.00
Nov. 25
Tropical - Fla.
156.00
Nov. 29
Aqueduct - N.Y.
740.00
Dec. 1
Aqueduct - N.Y.
660.00
Dec. 2
Aqueduct - N.Y.
250.00
Dec. 3
Aqueduct - N.Y.
890.00
Dec. 6
Pimlico - Md.
30.00
90.00
Dec. 8
Pimlico - Md.
170.00
70.00
45.00
Dec. 9
Pimlico - Md
770.00
300.00
Dec. 10
Pimlico - Md
100.00
Dec. 11
Pimlico - Md.
1,330.00
40.00
Dec. 13
Pimlico - Md.
40.00
160.00
Dec. 14
Pimlico - Md.
140.00
30.00
40.00
Dec. 18
Tropical - Fla.
20.00
Dec. 23
Tropical - Fla.
860.00
Dec. 27
Tropical - Fla.
Dec. 28
Tropical - Fla.
150.00
160.00
Dec. 30
Tropical - Fla.
150.00
200.00
Dec. 31
Tropical - Fla.
40.00
Total Losses
Net Gain
*119 Date
3nd Race
4th Race
5th Race
6th Race
7th Race
Oct. 5
Nov. 20
$1,000.00
Nov. 23
$ 810.00
Nov. 29
1,050.00
Dec. 6
Dec. 9
Nov. 1
200.00
600.00
$1,000.00
$ 650.00
Nov. 19
200.00
Nov. 20
$ 800.00
800.00
800.00
800.00
Nov. 22
150.00
100.00
250.00
Nov. 23
300.00
1,700.00
Nov. 25
50.00
20.00
90.00
Nov. 29
Dec. 1
30.00
Dec. 2
100.00
Dec. 3
Dec. 6
95.00
130.00
340.00
200.00
Dec. 8
120.00
90.00
225.00
60.00
150.00
Dec. 9
1,000.00
80.00
130.00
170.00
160.00
Dec. 10
410.00
230.00
390.00
Dec. 11
470.00
380.00
50.00
260.00
200.00
Dec. 13
100.00
70.00
1,100.00
1,350.00
10.00
Dec. 14
80.00
20.00
60.00
Dec. 18
Dec. 23
Dec. 27
200.00
450.00
50.00
Dec. 28
20.00
20.00
100.00
150.00
50.00
Dec. 30
370.00
500.00
270.00
Dec. 31
100.00
Date
8th Race
9th Race
10th Race
Total
Oct. 5
$46,306.20
Nov. 20
1,000.00
Nov. 23
810.00
Nov. 29
1,050.00
Dec. 6
$ 560.00
560.00
Dec. 9
49,906.20
Nov. 1
650.00
300.00
3,600.00
Nov. 19
300.00
Nov. 20
150.00
7,440.00
Nov. 22
250.00
Nov. 23
1,500.00
5,250.00
Nov. 25
70.00
$100.00
486.00
Nov. 29
3,200.00
3,940.00
Dec. 1
80.00
770.00
Dec. 2
350.00
Dec. 3
100.00
990.00
Dec. 6
885.00
Dec. 8
675.00
200.00
1,805.00
Dec. 9
110.00
2,720.00
Dec. 10
400.00
1,530.00
Dec. 11
250.00
610.00
3,590.00
Dec. 13
160.00
10.00
3,000.00
Dec. 14
270.00
150.00
790.00
Dec. 18
200.00
220.00
Dec. 23
860.00
Dec. 27
100.00
730.00
1,530.00
Dec. 28
350.00
50.00
1,050.00
Dec. 30
1,490.00
Dec. 31
40.00
180.00
43,026.00
$ 6,880.20
*120 717 On October 11, 1965, petitioner opened a checking account with the Coconut Grove Bank, Miami, Florida. She deposited therein $38,306.20 of her twin double winnings. She retained the remaining $8,000 in cash. On November 1, 1965, while in Miami, Florida, she wrote four checks on this account. She also produced $3,600 in losing tickets which represented bets placed at Aqueduct Race Track, New York, on November 1, 1965. Petitioner cashed a $10,000 check on November 30, 1965, in Miami, Florida. The race track tickets produced indicated the placing of bets at Aqueduct on November 29 and December 1, 1965. On September 13 and 25, 1967, petitioner met with James Bond (hereinafter referred to as Bond), an internal revenue agent. At the September 13 meeting petitioner informed Bond that she personally had placed all the bets which produced the claimed losses. During the September 25 meeting petitioner stated that William Lawton (hereinafter referred to as Lawton), a friend of petitioner's and a professional gambler, placed some of the bets for her, but she could not recall the specific dates. At trial petitioner stated she placed all bets except for those made on November 1, 19, and *121 20, 1965. During the September 13 discussion petitioner informed Bond that she based her choice of horses on advice of persons around the tracks. On September 25, however she stated that Lawton made all bet selections on her behalf. During the course of the trial petitioner informed the Court that Lawton, through various tips, told her which horse to bet on. She further noted that Lawton made the bet selections prior to petitioner's going to the track. Petitioner told Bond during their earlier meeting that she did not regularly attend the track with anyone. At the trial she stated that though she occasionally attended various race tracks alone, most of the time Lawton accompanied her. Petitioner originally informed Bond that she carried the bet money in her purse. Subsequently she stated that Lawton carried the cash. At the trial petitioner indicated that generally she carried the money, but on occasion Lawton would hold it. Petitioner stated that in 1965 she attended Aqueduct, Pimlico, Tropical and Detroit Race Tracks. During her interview with Bond and her testimony in Court, petitioner could not remember where she stayed while at these various tracks. She was not familiar *122 with the precise locations of the race tracks. Petitioner informed Bond that she was not aware of the audit, which eventually led to the instant case, until she received the 30-day letter dated July 11, 1967, and further, that she had not been in contact with her mother prior to that date. The audit began on May 22 of the same year, when Yale Freedline, an internal revenue agent, went to the residence of Harriet Britt, petitioner's mother. Petitioner called her mother on May 23, 28, June 4 and 18, 1967. Petitioner testified at trial that she did not know the whereabouts of Lawton. However, she was with him 1 week earlier and he knew of the pending proceedings. Neither petitioner nor her attorney requested or subpoenaed Lawton to testify in the instant case. The Coconut Grove Bank statement indicated that petitioner had a sufficient balance in her account to cover all of the abovenoted losing bets. However, the cash on hand and the withdrawals from her checking account had little, if any, correlation to the wagers made at the track. Opinion Petitioner, apparent winner of a twin double at the Detroit race course on October 6, 1965, reported $46,306.20 as her gross winnings. *123 From this amount however she deducted $39,896 alleged to be gambling losses. The first issue presented for determination is whether petitioner is entitled to a deduction for these gambling losses as provided in section 165(d), which states in part: (d) Wagering Losses. - Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions. The burden of proof rests with petitioner to demonstrate that she in fact incurred the claimed betting losses. Mack v. Commissioner, 429 F. 2d 182 (C.A. 6, 1970), affirming a Memorandum Opinion of this Court; Donovan v. Commissioner, 359 F. 2d 64 (C.A. 1, 1966). In this regard petitioner asserts that this burden has been carried by the submission of losing tickets and the daily race track programs. 718 We cannot agree. There is necessarily nothing on the face of the tickets to show they were purchased by petitioner. Therefore, in evaluating the evidence the single most important consideration is the credibility of the witness through whom the evidence is introduced. Due to the innumerable inconsistencies, evasiveness of the answers and petitioner's convenient ability to forget *124 all relevant matters, we simply can give no credence to her testimony. See Schoenberg v. Commissioner, 302 F. 2d 416, 419 (C.A. 8, 1962), affirming a Memorandum Opinion of this Court where the Court stated: A court is not compelled to believe the testimony of a witness even if it is not contradicted by direct evidence. This is particularly true with regard to an interested witness. See Stein v. Commissioner, 322 F. 2d 78, 82 (C.A. 5, 1963), affirming a Memorandum Opinion of this Court; compare Herman Drews, 25 T.C. 1354 (1956). Petitioner informed revenue agent Bond that she made all bets personally. However, the facts clearly demonstrate that on November 1, 1965, while petitioner was in Florida, bets were being placed at a New York track. The tickets introduced at trial indicate that on November 29, and December 1, losing bets were placed at Aqueduct race track in New York. However, the evidence makes clear that on November 30 petitioner cashed a check for $10,000 in Miami, Florida. At a meeting with Bond in September, 1967, petitioner noted that no one accompanied her to the track regularly. At trial she stated that Lawton almost always *125 was with her. She initially informed Bond that her bets were based on tips received from around the track. However, during cross examination she testified that Lawton made all bet selections. Further, petitioner was inconsistent as to who carried the money. Initially she stated that she carried all the cash in her purse, while later noted that Lawton carried it. Petitioner testified that she attended Aqueduct, Pimlico, Tropical and Detroit race tracks, yet she could not remember where she stayed or where the tracks were located. In short, it is our conclusion that it was not petitioner who placed the losing bets, but rather some other party, very probably her boyfriend, who just happened to be a professional gambler. We further note that Lawton, a close friend and the supposed participant in all of the alleged transactions, could easily have been called as a witness on petitioner's behalf. However, petitioner declined to do so. Faced with this precise situation, this Court in Wichita Terminal Elevator Co., 6 T.C. 1158 (1946), aff'd 162 F. 2d 513 (C.A. 10, 1947), stated: The rule is well established that the failure of a party to introduce evidence within *126 his possession and which, if true, would be favorable to him, gives rise to the presumption that if produced it would be unfavorable * * *. This is especially true where, as here, the party failing to produce the evidence has the burden of proof * * *. In the same vein we said in Samuel Pollack, 47 T.C. 92, 108 (1966), aff'd 392 F. 2d 409 (C.A. 5, 1968): The burden of proof was upon petitioners and we cannot assume that the testimony of a critical absentee witness would have been favorable to them. Indeed the normal inference is that it would have been unfavorable. See also Interstate Circuit v. United States, 306 U.S. 208, 226 (1939). In light of the above quoted language, it is apparent that petitioner's failure to call Lawton as a witness further substantiates the already apparent decision to disallow the claimed gambling losses. We finally note in passing that, "this is not a proper case for invoking the rule laid down in Cohan v. Commissioner, * * * 39 F. 2d 540 (C.A. 2, 1930)]. In that case * * * [the] Tax Court found that Cohan had made some allowable expenditures * * * yet gave him credit for none. The Second Circuit *127 held that * * * it would be arbitrary to disallow all claimed business expenses * * *. In the instant case there is no finding that gambling losses * * * were incurred by * * * [petitioner]. * * * [Therefore] there are no gambling losses to estimate." See also Williams v. United States, 245 F. 2d 559, 560 (C.A. 5, 1957). Upon an examination of the entire record we conclude that petitioner is not entitled to deduct the claimed gambling losses. The second issue relates to whether petitioner received unreported net income, in 1965, from gambling in the amount of $3,600. 719 We must again hold for respondent. Petitioner has admitted the receipt and noninclusion of additional gross income in the amount of $3,600. Acceptance of this concession by petitioner does not require the further acceptance of petitioner's claim of previously unreported offsetting losses. As the Court of Appeals for the Fifth Circuit stated in Stein v. Commissioner, supra: It was not error for the Tax Court to accept the entries in Stein's notebooks that showed daily net gambling winnings and fail to give credence to the entries in said notebooks that showed daily net losses. *128 The entries showing daily net gambling winnings were in the nature of declarations against interest while the entries showing daily net losses were in the nature of self serving declarations. [322 F. 2d at 82] See Plisco v. United States, 306 F. 2d 784, 787 (C.A.D.C. 1962). With regard to the final issue, petitioner has the burden to show that no part of any underpayment of income taxes was due to negligence or intentional disregard of rules and regulations. James S. Reily, 53 T.C. 8 (1969); Byron H. Farwell, 35 T.C. 454 (1960). In the instant case, due to petitioner's understatement of income, overstatement of deductions and her lack of financial records, we hold that she is subject to the penalty imposed in section 6653(a). Marcello v. Commissioner, 380 F. 2d 494 (C.A. 5, 1967), affirming on this issue a Memorandum Opinion of this Court. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.↩