THEODORE L. WOLKOMIR AND MARY E. WOLKOMIR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wolkomir v. Commissioner
Docket No. 12614-79.
United States Tax Court
T.C. Memo 1980-344; 1980 Tax Ct. Memo LEXIS 243; 40 T.C.M. (CCH) 1078; T.C.M. (RIA) 80344; August 27, 1980, Filed Theodore L. Wolkomir, pro se. Louis T. Conti, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $6,064 in the petitioners' Federal income tax for 1977. Some issues have been settled by the parties. The only issue presented for decision is whether petitioner Theodore L. Wolkomir is entitled to a wagering loss deduction under section 165(d) [1] for 1977 in excess of that allowed by respondent. *244 FINDINGS OF FACT Some of the facts were stipulated by the parties and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Theodore L. Wolkomir (petitioner) and Mary E. Wolkomir, husband and wife, resided in Exton, Pennsylvania, at the time they filed their petition in this case. They filed their joint Federal income tax return for 1977 with the Internal Revenue Service Center, Philadelphia, Pennsylvania, on which gambling winnings of $23,990 were reported as income and gambling losses of $23,990 were claimed as a miscellaneous deduction. During the period from April to September 1977, the petitioner made about 91 trips to the Meadows Race Track in Washington, Pennsylvania. There he bet exclusively a wager known as a "trifecta." To win a trifecta the bettor must correctly determine the specific order of finish of the first three horses in the race. Commensurate with the difficulty of winning such a bet, the pay-offs for a winning trifecta ticket are substantial. To maximize his potential winnings the petitioner selected mostly long shots in his trifecta wagers. From April to September 1977, the petitioner won *245 11 different trifecta wagers, sometimes having more than one winning ticket. As a result, 11 Information Returns (Forms 1099 and W-2G) were received by him, reflecting total winnings of $23,990. Information returns are issued whenever someone wins an amount in excess of $600 on a single ticket. Since petitioner bet only trifectas and never won one for less than $600, he reported the total ($23,990) reflected on the information returns as gambling winnings on his Federal income tax return for 1977. Petitioner frequently lost money on his bets. He incurred losses of $30,022 from gambling transactions in 1977, but claimed a deduction only to the extent of his winnings in that year. Petitioner computed his losses for 1977 in the following manner: After returning home each night from the track, he added the losing tickets (most of which were in sequential order) from that night's wagering and wrote the total loss for the night on a slip of paper. He then wrapped up that night's losing tickets along with the slip of paper in a rubberband and placed it in a box for safekeeping. All of the losing tickets were produced at the trial. From these daily records he later compiled the year's *246 losses on a schedule showing the amounts for each month and day. The schedule, along with the information returns, were given to petitioner's accountant to assist him in preparing the petitioner's Federal income tax return. The schedule reflected total losses of $30,022, of which petitioner claimed a deduction of $23,990. In his notice of deficiency dated July 19, 1979, respondent disallowed $18,875 of the claimed $23,990 deduction on the ground that the petitioner had not established gambling losses in excess of $5,115. In allowing the $5,115 deduction, respondent referred to petitioner's loss schedule and only allowed him losses for the days on which he had gambling winnings, as shown on the information returns. Respondent rejected the petitioner's records as inadequate for the days he had losses but no winnings. OPINION We must decide if the petitioner is entitled to deduct gambling losses he sustained in 1977 in excess of the amount allowed by the respondent. Section 165(d) provides that "losses from wagering transactions shall be allowed only to the extent of the gains from such transactions." Petitioner, who challenges the disallowance of claimed gambling losses, *247 has the burden of proving that he sustained such losses. Stein v. Commissioner,322 F.2d 78 (5th Cir. 1963), affg. T.C. Memo. 1962-19; Mack v. Commissioner,429 F.2d 182 (6th Cir. 1970), affg. T.C. Memo. 1969-26. We think the evidence here is persuasive that the petitioner made the wagers indicated by the losing tickets and reflected on his loss schedule, and that he incurred losses in excess of the winnings reported by him on his Federal income tax return. Respondent argues that the petitioner's evidence, consisting of the losing tickets, the schedule of losses, and his uncorroborated testimony relating to his losses, does not constitute proof sufficient to carry his burden. In support of his argument the respondent asserts that the petitioner's loss schedule is not the type of contemporaneous record required by Rev. Proc. 77-29, 1977-2 C.B. 538. Respondent also contends that the petitioner's records do not satisfy section 1.6001-1(a), Income Tax Regs., which requires a taxpayer to keep such books of account or records as are sufficient to establish the amounts of gross income, deductions, and other matters *248 shown on his tax return. We reject respondent's "inadequate substantiation" argument on this record. It is based partly on the notion that the petitioner failed to show that the losing tickets represent losing wagers made by him. One key fact in determining whether the losing tickets actually represent the petitioner's losing wagers is whether the tickets have consecutive serial numbers. In Saitta v. Commissioner,T.C. Memo. 1975-171, we held that the taxpayer failed to carry his burden of proof where the losing tickets offered into evidence bore nonconsecutive serial numbers, leading us to doubt seriously whether the tickets represented wagers made by him. By contrast, we concluded in Taormina v. Commissioner,T.C. Memo. 1976-94, on the basis of losing tickets offered into evidence bearing for the most part sequential serial numbers, that such tickets constituted substantiation sufficient to find that the taxpayer incurred wagering losses well in excess of those allowed by the Commissioner. In the present case the majority of tickets were in sequential order. Accordingly, we think they clearly represent losing wagers placed by the petitioner. *249 As this Court stated in Green v. Commissioner,66 T.C. 538, 548 (1976), there is no ironclad formula for determining what records should be deemed sufficient to prove losses under section 165(d). It is for us to decide what effect should be given to the petitioner's records which, of course, depends on the particular facts and circumstances of this case. Here we find the records adequate. In view of the losing ticket stubs and the summary loss schedule, coupled with the petitioner's forthright, credible and candid testimony, we are satisfied that he did incur gambling losses in excess of the winnings he reported on his 1977 Federal income tax return. Accordingly, we hold that the petitioner is entitled to deduct losses to the full extent of the gambling winnings he reported for the year 1977 pursuant to section 165(d). Finally, we note that the petitioners alleged in their petition that they should be awarded attorney's fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, Pub. L. 94-559, 42 U.S.C. 1988, 90 Stat. 2641. The claim is without merit because they are not entitled to attorney's fees in an action brought by *250 them in the United States Tax Court. See Key Buick Co. v. Commissioner,68 T.C. 178 (1977), affd. 613 F.2d 1306 (5th Cir. 1980); Kipperman v. Commissioner,622 F.2d 431 (9th Cir. 1980), affg. a Memorandum Opinion of this Court. To reflect the settled issues and our conclusion with respect to the disputed one, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue.↩