EDWARD AND LILLIAN WHITMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Whitman v. Commissioner
Docket No. 1024-83.
United States Tax Court
T.C. Memo 1985-537; 1985 Tax Ct. Memo LEXIS 97; 50 T.C.M. (CCH) 1322; T.C.M. (RIA) 85537; October 21, 1985. Kenneth N. ReKant and Sidney Wertheimer (specially recognized), for the petitioners. Claudine Ryce, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: By statutory notice of deficiency dated October 26, 1982, respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Section 6653(a) [1]
1978
$75,843
$3,792
1979
236,312
11,816
The issues for decision are: (1) whether petitioners in 1978 and 1979 had wagering winnings in excess of wagering losses, and if so, the amount of the excess winnings; (2) whether petitioners in 1978 had unreported interest income in the amount of $477; (3) if petitioners had wagering winnings in excess of wagering losses for 1978 and 1979, whether petitioners' failure to report the amount of such winnings was due to negligence or intentional disregard of rules or regulations; and (4) whether the statute of limitations for assessing income tax for 1978 expired prior to the issuance of the statutory notice of deficiency. *99 FINDINGS OF FACT Some facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners, Edward and Lillian, husband and wife, resided at 7835 Byron Avenue, Miami Beach, Florida, 33140, at all relevant times, including the time they filed their petition. Following his retirement in 1962, Edward frequented various racetracks almost on a daily basis until his health forced him to restrict such activities in 1983. Edward's gross gambling winnings at Florida racetracks amounted to at least $144,758 in 1978 and $381,204 in 1979 as evidenced by Forms W-2G (Statement for Certain Gambling Winnings) [2] which he signed in connection with receiving such winnings. With respect to these winnings, $17,538 was withheld during 1978, and $45,332 was withheld during 1979. Edward denied that he was, in the vernacular of the track, a "ten percenter", that is a person who, for 10% of the amount paid on the winning bet *100 ticket, provides his name, address and social security number to the track as the recipient of the winning bet. Edward claimed that during 1978 and 1979 his wagering losses exceeded his winnings. Edward testified that he recorded his winnings and losses daily in the racing program received at the track. He claimed that he retained the winning and losing bet tickets and placed them, together with the daily racing program, in a box which was kept at his house. Edward testified *101 that he received notification from the Internal Revenue Service that his 1978 and 1979 tax returns were under audit and that during the latter part of 1980 he went to respondent's North Dade office[3] in connection with such audit. He claimed that he took the box containing all winning and losing tickets for 1978 and 1979 to the North Dade office and left them with an unknown examining agent without getting a receipt. Respondent's records indicate that petitioners' 1978 and 1979 tax returns were first selected for audit on April 2, 1981, and that the first meeting between Edward and the examining agent (Janice Eckert) occurred on August 3, 1981, at respondent's downtown Miami office. Janice Eckert [4] testified that (1) her first meeting with Edward occurred on August 3, 1981, at respondent's downtown Miami office, (2) Edward informed her that he had thrown away his 1978 and 1979 records because he had been audited by respondent's North Dade office and "had been cleared", and (3) she contacted *102 respondent's North Dade office to verify Edward's story and was informed that that office neither had a "closed card file" on the petitioners nor did they have any record of Edward's ever appearing there. She further testified that had there been a prior audit of petitioners' 1978 and 1979 tax returns work papers prepared by the previous auditor would have been attached to the tax returns in accordance with respondent's customary operating procedures. In the instant situation, no such work papers were attached to petitioners' 1978 or 1979 tax returns. Martin Knopp, a group manager for the Internal Revenue Service office audit, testified that in accordance with respondent's customary operating procedures, an office audit of a taxpayer whose address has a zip code of 33140 (as did petitioners) would be held at respondent's downtown Miami office and not at its North Dade office. He further testified that normally a tax return would not be selected for audit, if at all, until a year or more after the return was filed, and that the examination of such return *103 would occur several months thereafter. Petitioners signed Form 872 (Consent to Extend the Time to Assess Tax) on January 4, 1982, agreeing that respondent could assess deficiencies in their 1978 income tax at any time prior to January 1, 1983. Mr. Knopp testified that respondent customarily mails Publication 1035 to taxpayers whenever there is a request to extend the time for assessment of tax. Publication 1035 explains the implications and effect of signing Form 872. Petitioners claimed they did not read Publication 1035 or understand the implications of signing Form 872; nevertheless, they acknowledged signing such form. Respondent determined that petitioners had gambling winnings of $144,758 for 1978 and $381,204 for 1979, which they negligently failed to report on their 1978 and 1979 tax returns. Respondent further determined that petitioners failed to report interest income of $477 in 1978. Petitioners claim that they had no net gambling winnings (that is, their gambling losses exceeded their gambling winnings) for either 1978 or 1979; and in any event the assessment for 1978 is barred by the statute of limitations. Petitioners introduced no evidence with respect to *104 their alleged failure to report interest income of $477 in 1978. ULTIMATE FINDINGS OF FACT (1) Petitioners had gambling winnings in excess of gambling losses in the amount of $85,000 in 1978 and in the amount of $220,000 in 1979, which they negligently failed to report on their tax returns for 1978 and 1979, respectively. (2) Petitioners failed to report interest income in the amount of $477 in 1978. (3) The statute of limitations for 1978 did not expire prior to the issuance of the statutory notice of deficiency on October 26, 1982. OPINION Gambling winnings are includable in gross income, sec. 61; gambling losses are deductible only to the extent of the taxpayer's gambling winnings during the same taxable year, section 165(d); section 1.165-10, Income Tax Regs.
Respondent determined that petitioners had gambling winnings of $144,758 in 1978 and $381,204 in 1979 and that they had no gambling losses during these years. The burden is on petitioners to prove that respondent erred in his determination. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Edward admitted that in both 1978 and 1979 he had substantial gambling winnings, although in amounts *105 less than that determined by respondent. He claimed, however, that his gambling losses for such years exceeded his winnings. To explain the unavailability of his gambling records for 1978 and 1979, Edward claimed that he gave all his records (without obtaining a receipt), including winning and losing bet tickets, to an unidentified examining agent at respondent's North Dade office sometime in 1981. We have difficulty in believing Edward's explanation. First, we do not believe that Edward retained winning bet tickets since collection of winnings are dependent upon relinquishment of the winning tickets. Thus, he could not have given "retained" winning bet tickets to the examining agent. Second, we find it difficult to believe that the audit of petitioners' returns for 1978 and 1979 would have occurred in 1980. Such would mean that the audit would have had to occur less than nine months after the 1979 return was filed. Third, we find it difficult to believe that the audit would have occurred at respondent's North Dade office since pursuant to respondent's customary operating procedures, the examination of a taxpayer having a zip code of 33140 (during the years in question) would *106 have been held at respondent's downtown Miami office and not at the North Dade office. [5]
Even though petitioners failed to prove the exact amount of their gambling losses for 1978 and 1979, we believe in light of the record herein that Edward could not have gambled as often as he did without incurring some losses. Accordingly, we hold that petitioners had gambling winnings in excess of gambling losses in the amount of $85,000 in 1978 and in the amount of $220,000 in 1979. There is no evidence in the record to refute respondent's determination that petitioners failed to report interest income in the amount of $477 in 1978. Accordingly, petitioners' not having borne their burden of proof, respondent's determination is sustained with respect to this issue. An addition to tax, under section 6653(a) is imposed if there is an underpayment of tax and if such underpayment is due to negligence or intentional disregard *107 of rules or regulations. Based on our finding that petitioners had gambling winnings in excess of gambling losses in 1978 and 1979, they have underpaid their income tax for such years. Having found an underpayment of tax, we must decide whether the underpayment was due, in whole or in part, to negligence or intentional disregard of rules or regulations. Petitioners knew, or should have known, that they had to keep records of their gross wagering winnings (sec. 6001; sec. 1.6001-1(a), Income Tax Regs.), that they had to report these winnings as income (sec. 61) and that they had to substantiate their losses with adequate records in order to be able to claim them as deductions (sec. 1.6001-1(a), Income Tax Regs.).Their failure to keep records of their track activities without a plausible explanation for such failure is sufficient grounds on which to base an addition to tax under section 6653(a). Mack v. Commissioner,429 F.2d 182 (6th Cir. 1970), affg. a Memorandum Opinion of the Court. Therefore, respondent's determination with regard to the imposition of the section 6653(a) addition to tax is sustained. Finally, we find no reason not to give effect to the Form *108 872 executed by the parties which extended the period of limitations on assessment with respect to 1978. Respondent has the burden to prove that the period of limitations had been extended, which he sustained by producing a facially valid Form 872. Respondent having done so, in order for petitioners to invalidate the Form 872 they must prove that they executed it while incompetent, subject to fraud or duress, or that the content was misrepresented by respondent. Hollman v. Commissioner,38 T.C. 251, 260 (1962). Petitioners did not prove, any grounds that would persuade us to hold the execution of Form 872 to be invalid. They claim that they misunderstood its effect; however, they were supplied with a copy of Publication 1035, which explained the implications and effects of signing the form. It is inconsequential that petitioners failed to read the publication, or that they believed the effect of a signed Form 872 to be different than it was. Absent grounds on which we may hold the signed Form 872 invalid, its operation is given full effect. Since the notice of deficiency was mailed within the extended period, it was timely. To reflect the foregoing, Decision *109 will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect for the years at issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Pursuant to section 6041, racetracks making a payment of $600 on a winning ticket (exclusive of the amount of the bet) are required to file an information return (Form W-2G) with the Internal Revenue Service indicating, among other items, the name, address and social security number of the winner and the date and amount of the payment. For purposes of identification, the person receiving payment must furnish to the track two types of identification verifiying his name, address and social security number. Section 7.6041-1(c), Temporary Income Tax Regs.↩ If the payment exceeds $1,000 (exclusive of the amount of the bet), the track is required to withhold 20% of the amount of the winnings. Sec. 3402(q).
3. Lillian testified that she went with Edward to the North Dade office sometime in 1978. She could not remember the exact date but recalled it was prior to her retirement in 1979.↩
4. At the time of trial, Ms. Eckert was employed by the Internal Revenue Service as an Appeals Officer in Tampa, Florida.↩
5. Based on Lillian's testimony that she went with Edward to respondent's North Dade office sometime in 1978, plausibly petitioners' tax returns for years prior to those herein at issue were audited and Edward went to the North Dade office in connection with that audit.↩