T.C. Memo. 2009-67

UNITED STATES TAX COURT

JAYNE A. BRISENO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17363-06.                    Filed March 26, 2009.

Jayne A. Briseno, pro se.

<u>Michael S. Hensley</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Respondent determined deficiencies and additions to tax with respect to petitioner's 1999, 2001, and 2002 (years at issue) Federal income taxes as follows:[1]

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

(continued...)

| | | Additions to Tax | | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
|---|---|---|---|---|
| 1999 | $2,782 | $626 | $70 | $135 |
| 2001 | 61,249 | 13,822 | 1,505 | 2,455 |
| 2002 | 170,136 | 38,281 | 4,253 | 5,685 |

After concessions,[2] the issues for decision are: (1) Whether petitioner received gambling income and is entitled to deduct gambling losses; (2) whether petitioner is entitled to dependency exemption deductions for her sons, head of household filing status, and child tax credits; (3) whether petitioner is entitled to itemized deductions including deductions for home mortgage interest and real estate taxes; and (4) whether petitioner is liable for additions to tax under sections 6651(a)(1) and 6654.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. At the time she filed her petition, petitioner resided in California.

_____

[1](...continued)
Amounts are rounded to the nearest dollar.

[2]Petitioner conceded that she received $100 of interest income in 1999 and $29,500 of capital gains in 2001. Respondent conceded that petitioner is not a professional gambler and therefore is not liable for self-employment tax. Respondent also conceded that petitioner is not liable for the additions to tax under sec. 6651(a)(2).

Petitioner is a recreational gambler who played slot machines at various casinos during the years at issue. Those casinos issued her Forms W-2G, Certain Gambling Winnings, reporting that she received winnings of $13,240 in 1999, $139,714 in 2001, and $459,397 in 2002. During at least a portion of the years at issue she also was employed selling fasteners such as nuts and bolts.[3]

Petitioner is the mother of two children: Dustin, who was born in 1980 and Johnny, who was born in 1985. During the years at issue Johnny lived with petitioner, and she was his primary source of support. Dustin also lived with petitioner except when he was away at college. Nevertheless, she was his primary source of support.

Petitioner did not file Federal income tax returns for 1999 through 2002, nor did she make estimated tax payments or have any income tax withheld during the years at issue. Shortly before trial petitioner prepared Forms 1040, U.S. Individual Income Tax Return, for the years at issue, but they have not been filed with respondent.

Each of the returns states that petitioner received gambling income in amounts equal to or slightly less than the amounts

---

[3]The notices of deficiency do not include any income from petitioner's employment, and respondent has not otherwise alleged that petitioner received employment income.

reported on the Forms W-2G.[4]  Her 1999 return includes gambling losses equal to her reported winnings.  Her 2001 and 2002 returns include gambling losses of $126,924 and $413,279, respectively, indicating that petitioner's net gambling income in those years was at least $12,790 and $45,218, respectively.  Petitioner's returns did not include any additional income except a $29,500 capital gain in 2001.

After receiving notices of deficiency for the years at issue, petitioner filed a timely petition with this Court and trial was held in San Diego, California.

OPINION

A.  Gambling Winnings and Losses

In cases of unreported income, the Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie, requires that the Commissioner provide a minimal evidentiary foundation connecting the taxpayer with the unreported income before the presumption of correctness attaches to the Commissioner's determination.  See Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), affg. T.C. Memo. 1997-97; Weimerskirch v. Commissioner, 596 F.2d 358, 360-361 (9th Cir. 1979), revg. 67 T.C. 672 (1977).  Once the Commissioner has met this initial burden, the taxpayer must establish by a

---

[4]Petitioner's 2002 return states that she received $458,497 of gambling winnings in 2002, $900 less than the total reported on the Forms W-2G.  Petitioner offered no explanation for the difference.

preponderance of the evidence that the Commissioner's determination is arbitrary or erroneous. See Hardy v. Commissioner, supra at 1004.

Gross income includes all income from whatever source derived, including gambling. See sec. 61; McClanahan v. United States, 292 F.2d 630, 631-632 (5th Cir. 1961). In the case of a taxpayer not engaged in the trade or business of gambling, gambling losses are allowable as an itemized deduction, but only to the extent of gains from such transactions. Sec. 165(d). To establish entitlement to a deduction for gambling losses the taxpayer must prove the losses sustained during the taxable year. Mack v. Commissioner, 429 F.2d 182 (6th Cir. 1970), affg. T.C. Memo. 1969-26.

Respondent provided Forms W-2G showing that petitioner received slot machine winnings in the amounts determined in the notice of deficiency. Furthermore, petitioner's returns prepared before trial serve as an admission that petitioner received the winnings. Accordingly, we conclude that petitioner received gambling winnings in the amounts determined by respondent.

Although petitioner alleged that she maintained contemporaneous gambling logs, she was unable to produce any evidence of a log or any other contemporaneous evidence of her winnings and losses. Accordingly, we conclude that petitioner

has failed to satisfy her burden of substantiating her gambling losses.

As a general rule, if the trial record provides sufficient evidence that the taxpayer has incurred a deductible expense, but the taxpayer is unable to substantiate adequately the precise amount of the deduction to which he or she is otherwise entitled, the Court may estimate the amount of the deductible expense, and allow the deduction to that extent. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). In these instances, the Court may make as close an approximation of the allowable expense as it can, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, supra at 544.

Petitioner received her gambling winnings from playing slot machines. During the years at issue she won a few jackpots larger than $10,000, but most of her winnings were of amounts between $1,000 and $4,000. In other words, she did not receive her winnings in one, or even a few, large jackpots. She gambled frequently and when she won she would often "reinvest" those winnings in the slot machines, losing much or all of what she had won. We regard it as a virtual certainty that petitioner, playing a game of chance frequently over the course of several

-7-

years, placed many losing bets in addition to her winning ones. Furthermore, we do not find that petitioner lived a lavish lifestyle or had significant accession to wealth.

We are not aware of a case in which a taxpayer received winnings from a game of chance of the magnitude petitioner received, but was not entitled to a penny of offsetting loss. For example, in Jackson v. Commissioner, T.C. Memo. 2007-373, the taxpayer received $265,795 of slot machine winnings and the Commissioner conceded $127,165 of related losses. In Hardwick v. Commissioner, T.C. Memo. 2007-359, the taxpayers received $308,400 of slot machine winnings and the Commissioner conceded $170,215 of losses. In Lutz v. Commissioner, T.C. Memo. 2002-89, the taxpayer received slot machine winnings of $144,645 and the Commissioner conceded $43,819 of losses to which we added $4,975. See also Gagliardi v. Commissioner, T.C. Memo. 2008-10 (holding that the taxpayer substantiated his slot machine losses partly on the basis of expert witness testimony that it was highly unlikely that the taxpayer broke even playing slot machines); Doffin v. Commissioner, T.C. Memo. 1991-114 (taxpayer allowed $65,494 of losses to offset $78,811 of winnings under the rule of Cohan v. Commissioner, supra).

We conclude that petitioner incurred gambling losses, but she was unable to substantiate the amount of the losses to which she is entitled. Our duty is to make as close an approximation

of the losses as we can, bearing heavily upon the taxpayer whose inexactitude is her own making.  Doffin v. Commissioner, supra. "But to allow nothing at all appears to us inconsistent with saying that something was spent."  Cohan v. Commissioner, supra at 544.

On the basis of petitioner's financial situation and the virtual certainty that she placed many losing bets during her years of playing slot machines, we hold that petitioner is entitled to deduct $7,944 of gambling losses in 1999, $83,828 in 2001, and $275,638 in 2002.

B.  Dependency Exemptions, Head of Household Filing Status, and Child Tax Credits

Section 151(c)(1) provides that an exemption is allowed for each dependent who is a child of the taxpayer who has not attained the age of 19 at the end of the calendar year or is a student who has not attained the age of 24 at the end of the calendar year.  Section 152(a) defines dependent to include the son or daughter of a taxpayer over half of whose support was received from the taxpayer for the calendar year.  Under section 152(e), in the case of a child whose parents are divorced, legally separated, or living apart and who is in the custody of one or both parents for more than half the year, the dependency exemption deduction generally belongs to the parent who has custody for the greater portion of the year.

Petitioner divorced her husband in April 2000. She credibly testified that her children lived with her during the years at issue except when her older son, Dustin, who had not attained the age of 24, was away at college. She further credibly testified that she provided most of their support. Dustin was in neither parent's custody during the years at issue because he had reached the age of majority.[5] See Boltinghouse v. Commissioner, T.C. Memo. 2007-324. However, petitioner provided more than half his support and therefore is entitled to a dependency exemption deduction for him for the years at issue under section 152(a) without regard to section 152(e).

Petitioner had custody of her younger son, Johnny, and petitioner and Johnny's father were divorced during 2001 and 2002. Therefore, petitioner is entitled to a dependency exemption deduction for him for 2001 and 2002 under section 152(e). The record does not establish whether petitioner and Johnny's father, who were married throughout 1999, nevertheless lived apart that year. However, petitioner provided more than half of Johnny's support in 1999. Therefore, she is entitled to a dependency exemption deduction for him for 1999 under section 152(a) without regard to section 152(e).

---

[5]Once a child reaches the age of majority under State law, he is no longer in the custody of either parent for purposes of sec. 152(e). Boltinghouse v. Commissioner, T.C. Memo. 2007-324. Under California law a person reaches the age of majority when he reaches 18 years of age. Cal. Fam. Code secs. 6500-6502 (West 2004).

Under section 2(b)(1), a taxpayer is allowed to file as head of household if the taxpayer is not married at the close of the taxable year, is not a surviving spouse, and maintains as her home "a household which constitutes for more than one-half of such taxable year the principal place of abode" for certain enumerated individuals, including a taxpayer's child. During 2001 and 2002 petitioner was not married and maintained as her home a household in which at least one of her children lived for more than half of each of those years. Accordingly, petitioner is entitled to head-of-household filing status for 2001 and 2002 but not 1999 because she was married at the close of that year.[6]

Section 24(a) allows a tax credit with respect to each qualifying child of a taxpayer. For purposes of section 24, the term "qualifying child" means a taxpayer's child for whom the taxpayer is entitled to a dependency exemption and who has not attained the age of 17 as of the close of the taxable year. Sec.

---

[6]Sec. 2(c) provides that if a taxpayer is married but living apart from her spouse, she may be treated as unmarried for head-of-household filing purposes if the taxpayer meets the requirements of sec. 7703(b). Sec. 7703(b) treats an individual as not married if: (1) The taxpayer files a separate tax return; (2) the taxpayer maintains a household that is for more than one-half of the taxable year the principal place of abode of the taxpayer's child for whom the taxpayer would be entitled to claim a dependency exemption; (3) the taxpayer pays more than half the cost of maintaining the household for the tax year; and (4) the taxpayer's spouse is not a member of the household during the last 6 months of the tax year. The record does not establish that petitioner's husband was not a member of her household during the last 6 months of 1999. Therefore, petitioner does not qualify for head of household status for 1999.

24(c)(1). The amount of the credit allowable under section 24(a) is limited by the taxpayer's adjusted gross income and may not exceed a taxpayer's regular tax liability. Sec. 24(b), (d). Petitioner's 2002 income exceeds the income limitations and precludes her from receiving a child tax credit for that year. Petitioner's 1999 and 2001 income do not exceed the income limitations. Petitioner's older son was 19 in 1999 and 21 in 2001, and thus petitioner is not entitled to a credit for him. She is, however, entitled to a child tax credit for 1999 and 2001 for her younger son who was only 14 in 1999 and 16 in 2001 unless the credit exceeds her Federal income tax liability for those years (which, subject to the parties' computations under Rule 155, it may).

## C.  Itemized Deductions

Deductions are a matter of legislative grace, and a taxpayer bears the burden of proving that she has complied with the specific requirements for any deduction claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); see also Rule 142(a).

Petitioner claims she is entitled to home mortgage interest deductions. Subject to certain exceptions not applicable here, a taxpayer is generally allowed to deduct all interest paid with respect to the acquisition of the taxpayer's principal residence. Sec. 163(a), (h)(2)(D). Petitioner provided sufficient evidence

that she paid home mortgage interest of $36,927 and $45,553 during 2001 and 2002, respectively, but provided no evidence with respect to 1999. Accordingly, petitioner is entitled to the home mortgage interest deduction for 2001 and 2002, but not for 1999.

Petitioner also claims she is entitled to deductions for real estate taxes paid during the years at issue. Section 164 allows a deduction for certain taxes, including State and local real property taxes, paid or accrued during the taxable year. Petitioner provided sufficient evidence that she paid $3,056 in real estate taxes for 2002, but provided no evidence with respect to the other years at issue. Accordingly, petitioner is entitled to the deduction for real estate taxes paid for 2002, but not for 1999 and 2001.

Petitioner claims she is entitled to other itemized deductions including deductions for medical expenses, personal property taxes, charitable contributions, casualty losses, unreimbursed employee business expenses, and tax preparation fees.[7] Petitioner offered either her own vague, uncorroborated testimony or no evidence at all to substantiate these deductions. Accordingly, she has failed to meet her burden of proving her entitlement to any deduction beyond the real estate tax and mortgage interest deductions.

---

[7]We find petitioner's claim of entitlement to unreimbursed employee expenses particularly dubious because she has not admitted that she received any employment income.

D.    Additions to Tax Under Sections 6651(a)(1) and 6654

The Commissioner bears the initial burden of production with respect to a taxpayer's liability for additions to tax under sections 6651(a)(1) and 6654(a).  Sec. 7491(c); Rule 142(a); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).  To meet this burden, the Commissioner must come forward with sufficient evidence indicating it is appropriate to impose the additions to tax.  Higbee v. Commissioner, supra at 446-447.  The taxpayer bears the burden of proof as to any exception to the additions to tax.  See sec. 7491(c); Rule 142(a); Higbee v. Commissioner, supra at 446-447.

Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed (determined with regard to any extension of time for filing) unless the taxpayer can establish that such failure is due to reasonable cause and not due to willful neglect.  Petitioner did not file returns for the years at issue.  She argues that she did not file returns because she believed she had "negative income".  The record establishes that petitioner received income in excess of her deductions and exemptions for the years at issue.[8]  Petitioner's mistakes as to, or ignorance of, the law do not constitute reasonable cause which

[8]If after application of the exemptions, standard deduction, gambling losses, and child tax credit petitioner has no income tax liability for 1999, she will not be liable for an addition to tax under sec. 6651(a)(1) because the addition to tax is calculated as a percentage of the tax required to be shown on the return.

would relieve her of liability for the additions to tax.  See Joyce v. Commissioner, 25 T.C. 13, 15 (1955).  Accordingly, we conclude that petitioner is liable for additions to tax under section 6651(a)(1).

Section 6654(a) imposes an addition to tax on an underpayment of estimated tax unless one of the statutory exceptions applies.  See sec. 6654(e).  The addition to tax is calculated with reference to four required installment payments of the taxpayer's estimated tax liability.  Sec. 6654(c)(1); Wheeler v. Commissioner, 127 T.C. 200, 210 (2006), affd. 521 F.3d 1289 (10th Cir. 2008).  Each required installment of estimated tax is equal to 25 percent of the "required annual payment." Sec. 6654(d)(1)(A).  The required annual payment is generally equal to the lesser of (1) 90 percent of the tax shown on the individual's return for that year (or, if no return is filed, 90 percent of his or her tax for such year), or (2) if the individual filed a return for the immediately preceding taxable year, 100 percent of the tax shown on that return.  Sec. 6654(d)(1)(B); Wheeler v. Commissioner, supra at 210-211.  A taxpayer has an obligation to pay estimated taxes for a particular year only if she has a "required annual payment" for that year.  Wheeler v. Commissioner, supra at 211.

Petitioner filed her 1998 return, reporting tax due of $1,871.  Petitioner did not file Federal income tax returns or

pay estimated taxes for 1999, 2000, 2001, and 2002. Under section 6654(e)(1), a taxpayer is not liable for an addition to tax under section 6654(a) if the tax shown on the return (or if no return is filed, the taxpayer's tax for that year) is less than $1,000. After application of petitioner's gambling losses, exemptions, standard deduction, and child tax credit, petitioner's 1999 income tax liability is less than $1,000. Therefore, she is not liable for an addition to tax under section 6654 for 1999. Because petitioner did not file returns or pay estimated tax for 2000 through 2002, she is liable for additions tax under section 6654 for 2001 and 2002 calculated with respect to the required annual payments; i.e., 90 percent of the tax due for the respective years.

To reflect the foregoing and the concessions of the parties,

Decision will be entered

under Rule 155.