ISAAC LOREAN CONLEY, JR. AND GLORIA HANDLEY CONLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Conley v. Commissioner
Docket No. 11457-90
United States Tax Court
T.C. Memo 1992-215; 1992 Tax Ct. Memo LEXIS 229; 63 T.C.M. (CCH) 2735; April 9, 1992, Filed *229 Decision will be entered under Rule 155. Isaac Lorean Conley, Jr., pro se. Ronald A. Campbell, for petitioner Gloria Handley Conley. Paul J. Krazeise, Jr., for respondent. DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: [1] Respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6651(a)(1)
n16653(a)(1) 6653(a)(2)
6661
1984
$ 15,333
$ 2,183.25
$ 770.35
50% of the
$ 3,833.25
interest due
on $ 15,333
1987
1,325
--
66.25
50% of the
--
interest due
on $ 1,325
At trial, respondent conceded the entire deficiency and additions to tax for 1987. [2] The issues for decision, all relating to 1984, are: (1) Whether petitioners are entitled to a deduction of $ 34,051 for wagering losses sustained to the extent of their reported wagering *230 winnings pursuant to section 165(d); [3] (2) whether petitioners are liable for the addition to tax for failure to timely file their return pursuant to section 6651(a)(1); (3) whether petitioners are liable for the additions to tax for negligence pursuant to section 6653(a)(1) and (2); (4) whether petitioners are liable for the addition to tax for substantial understatement pursuant to section 6661; and (5) whether petitioner Gloria Handley Conley is entitled to separate relief because she was not a party to the joint return or she was an innocent spouse pursuant to section 6013(e). [4]
*231 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of facts and the attached exhibits are incorporated herein by this reference. Isaac Lorean Conley, Jr. and Gloria Handley Conley (hereinafter collectively referred to as petitioners) resided in Louisville, Kentucky, at the time they filed their petition. In February 1986, they delinquently filed a joint Federal income tax return for 1984. At respondent's request, in January 1989, petitioners each signed a Form 872, Consent to Extend the Time to Assess Tax, for 1984. In 1984, petitioner Isaac Lorean Conley, Jr. (Mr. Conley) was a practicing attorney in Kentucky and Indiana. Gloria Handley Conley (Mrs. Conley) was not employed in that year. While neither Mr. Conley nor Mrs. Conley were professional gamblers, they both engaged in considerable racetrack gambling activities. They frequently placed wagers at several racetracks during 1984, including Churchill Downs and Louisville Downs in Louisville, Kentucky, Turfway Park (formerly known as Latonia Race Course) in Florence, Kentucky, and River Downs in Cincinnati, Ohio. Mr. Conley spent more time at the racetracks than Mrs. Conley. In *232 addition to accompanying his wife, Mr. Conley would also attend the racetracks alone, and with friends. [5] Mrs. Conley would also place bets over the telephone, by way of a "call-in bets" service. Winning tickets must be turned in to a racetrack in exchange for the amount won. Losing tickets are often retained by bettors to record their losses. Racetracks are required to report to the Internal Revenue Service, on Forms W-2G, all winning tickets cashed in excess of $ 600, and are required to withhold taxes on winnings in excess of $ 1,000. At trial, petitioners produced losing tickets in the total amount *233 of $ 10,963. Although they claimed that they sustained far greater losses, they did not produce any other losing tickets or any records of such losses. The tickets petitioners did produce were, for the most part, in sequential order. The tickets were also in good condition; they were not dirty, torn, or bore any shoe prints. In late 1984 and 1985, Mr. Conley was treated for depression and alcohol abuse. He spent approximately six weeks in treatment. Petitioners claim that these conditions prevented him from maintaining more accurate records of his wagers. Mrs. Conley did not maintain any records of her wagering activities. Listed below are petitioners' reported gross winnings for 1984 [6] and the total dollar amounts of the losing tickets they submitted at trial: [7]
Reported Winnings
Losing Tickets
January
$ 5,906
--
March
1,348
--
April
--
$ 77    May
--
2
June
2,098
50
July
12,244
7,632
August
2,662
281
September
3,508
2,504
October
5,622
417
November
661
--
Totals:
$ 34,049 $ 10,963
*234 Mrs. Conley earned $ 4,803 of petitioners' total winnings; Mr. Conley earned the remaining amounts. Despite the fact that petitioners were only able to produce tickets totaling $ 10,963, they claimed gambling losses equal to their total reported gambling winnings ($ 34,051) on their 1984 joint Federal income tax return. In her notice of deficiency, respondent disallowed this gambling loss deduction in full. Since petitioners' marriage, Mr. Conley has kept all of their financial records and prepared their joint Federal income tax returns. Mrs. Conley has generally signed the couple's joint tax returns without reviewing their contents. However, Mr. Conley signed his wife's name on their joint 1984 Federal tax return. Nevertheless, Mrs. Conley understood that her gambling winnings were included on their 1984 return and that she had an obligation to report her income. In 1985, petitioners filed for bankruptcy. They assert that this bankruptcy was caused by their large gambling losses in 1984. OPINION 1. Wagering Losses
The first issue is whether petitioners are entitled to their claimed deduction for gambling losses allegedly sustained in 1984. Respondent disallowed *235 all the reported losses for lack of substantiation. Petitioners contend that such losses are substantiated by the gambling tickets produced at trial and by their oral testimony. Section 165(d) provides that "losses from wagering transactions shall be allowed only to the extent of the gains from such transactions". The burden of proof is on petitioners to establish the amount of gambling losses they sustained. Rule 142(a); Norgaard v. Commissioner, 939 F.2d 874 (9th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-390; Mack v. Commissioner, 429 F.2d 182 (6th Cir. 1970), affg. T.C. Memo. 1969-26; Fogel v. Commissioner, 237 F.2d 917 (6th Cir. 1956), affg. per curiam T.C. Memo. 1955-186; Schooler v. Commissioner, 68 T.C. 867, 869 (1977). The issue is factual and must be decided on the evidence presented. Green v. Commissioner, 66 T.C. 538, 544 (1976). Section 6001 requires taxpayers to keep records adequate to substantiate their income and deductions. See section 1.6001-1(a), Income Tax Regs. However, there is no ironclad *236 formula for determining what records should be deemed sufficient to prove losses under section 165(d). See Green v. Commissioner, supra at 548. It is for the Court to decide what effect should be given to a taxpayer's records. This determination depends on the particular facts and circumstances of each case. See Wolkomir v. Commissioner, T.C. Memo. 1980-344. The only records of their gambling losses that petitioners produced are their losing tickets. Although they should have kept more adequate substantiation records, we conclude that petitioners incurred and are entitled to losses of $ 10,963 to offset their 1984 winnings. For the most part, their testimony regarding their gambling activities, and their friends' corroborating statements in the depositions, together with the documentary evidence (the gambling tickets), provide a sufficient basis for decision. See, e.g., Drews v. Commissioner, 25 T.C. 1354 (1956). However, their lack of adequate records prevents us from determining the precise amount of petitioners' claimed gambling losses. The general sequential order and good condition of the tickets are some *237 indication of reliability. See, e.g., Wolkomir v. Commissioner, T.C. Memo. 1980-344; Taormina v. Commissioner, T.C. Memo. 1976-94. Suffice it to say that based on all the facts contained in this record, we hold that petitioners are entitled to a gambling loss deduction of $ 10,963, corresponding to the total amount of their losing tickets. It therefore follows that they are not entitled to the remaining claimed gambling losses in the amount of $ 23,088 because there are no records to substantiate these losses. 2. Section 6551(a)(1) Addition to Tax
Section 6651(a)(1) imposes an addition to tax for failure to timely file a return (determined with regard to any extension of time for filing) at the rate of 5 percent of the amount of tax due per month up to 25 percent in the aggregate, unless such failure is due to reasonable cause and not due to willful neglect. The term "willful neglect" means a conscious, intentional, or reckless indifference. United States v. Boyle, 469 U.S. 241 (1985). The regulations define "reasonable cause" sufficient to excuse the failure to file a return as the exercise of "ordinary business *238 care and prudence". Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Whether the late filing of an income tax return is due to reasonable cause or willful neglect is a question of fact. Commissioner v. Walker, 326 F.2d 261, 264 (9th Cir. 1964), affg. on this issue 37 T.C. 962 (1962). Petitioners delinquently filed their 1984 Federal income tax return. They attempted to prove reasonable cause for their failure to timely file by stating that Mr. Conley was too ill to timely file the return and that Mrs. Conley always relied on her husband to "take care" of such matters. However, we do not believe that Mr. Conley's health was so poor as to make him incapable of timely filing the 1984 return. See, e.g., Heber v. Commissioner, T.C. Memo. 1989-85 ("vague testimony about being depressed and in a bad state of health" was insufficient to overturn addition to tax for untimely filing). Further, as an attorney, Mr. Conley was fully aware of his duty to timely file tax returns. Consequently, we hold that petitioners are liable for the section 6651(a)(1) addition to tax for 1984. 3. Section 6653(a)(1) and (a)(2) Additions to Tax
*239 Section 6653(a)(1) imposes an addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. Section 6653(a)(2) imposes an additional amount, but only with respect to the portion of the underpayment attributable to the negligence. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination of negligence is presumed to be correct and petitioners have the burden of proving that it is erroneous. Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 860-861 (1982). Petitioners failed to produce any regularly maintained record or verifiable documentation of their gambling losses. See Famuyiwa v. Commissioner, T.C. Memo. 1991-570; sec. 1.6001-1(a), Income Tax Regs. As a result, they did not adequately substantiate their claimed gambling losses. Although taxpayers are not subject to the addition to tax for negligence where they make honest mistakes in complex matters, they are required to take reasonable steps to *240 determine the law and to comply with it. See Adams v. Commissioner, T.C. Memo. 1982-223, affd. without published opinion 732 F.2d 159 (7th Cir. 1984). Petitioners have not done so, despite the fact that Mr. Conley was a practicing attorney and was aware of his obligations. Notwithstanding Mr. Conley's poor health, his condition does not justify our holding that petitioners were not negligent or that they did not intentionally disregard the rules and regulations. Accordingly, we sustain respondent's determination of the additions to tax under section 6653(a)(1) and (2), as applied to the deficiency resulting from our holding as to the amount of petitioners' net gambling income for 1984. 4. Section 6661(a) Addition to Tax
Section 6661(a) provides for an addition to tax if there is a substantial understatement of income tax. The amount of the section 6661 addition to tax for additions assessed after October 21, 1986, is equal to 25 percent of the amount of any underpayment attributable to the substantial understatement. Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, sec. 8002, 100 Stat. 1951; Pallottini v. Commissioner, 90 T.C. 498, 501-502 (1988). *241 In the case of an individual, an understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). The understatement is reduced if it is based on substantial authority or is adequately disclosed on the return or in a statement attached to the return. Sec. 6661(b)(2)(B). We have decided that petitioners understated their net gambling income for 1984. This understatement was neither based on substantial authority nor adequately disclosed on the return or in a statement attached to the return. Therefore, if, pursuant to the Rule 155 computation, petitioners' understatement of their 1984 tax liability was substantial under section 6661(b)(1)(A), then the resulting addition to tax under section 6661(a) is sustained. 5. Joint Return and Innocent Spouse Relief
The last issue is whether Mrs. Conley is entitled to relief either because she was not a party to a joint return for 1984 or she was an innocent spouse in that year. Mrs. Conley argues that since she did not sign the 1984 Federal income tax return, she is not liable for the deficiency and additions to tax determined by respondent. Alternatively, *242 she argues that, even if she might otherwise be liable for the taxes owed, she is entitled to innocent spouse relief. Respondent contends that Mrs. Conley was a party to the return and that she is not an innocent spouse. A. Joint Return
It is well established that the signature of only one of two spouses does not preclude a return from being treated as a joint return. See Federbush v. Commissioner, 34 T.C. 740, 757 (1960), affd. per curiam 325 F.2d 1 (2d Cir. 1963); Kann v. Commissioner, 18 T.C. 1032, 1045 (1952), affd. 210 F.2d 247, 251 (3d Cir. 1953); Howell v. Commissioner, 10 T.C. 859, 866 (1948), affd. per curiam 175 F.2d 240 (6th Cir. 1949). The determining factor is whether "the spouses intended to file a joint return, their signatures being but indicative of such intent. * * * This intent may be inferred from the acquiescence of the nonsigning spouse". Hennen v. Commissioner, 35 T.C. 747, 748 (1961); Federbush v. Commissioner, supra; Howell v. Commissioner, supra.
Where a spouse does not *243 sign a return, a "tacit consent" rule applies to determine the nonsigning spouse's intent. Howell v. Commissioner, supra at 866. Tacit consent exists where one spouse files a joint return without objection of the nonsigning spouse when the nonsigning spouse fails to file a separate return. Howell v. Commissioner, supra at 868. We have looked to many factors to determine the presence of consent by a nonsigning spouse. These factors include the couple's history of filing joint returns, whether the nonsigning spouse received any of the benefits of the joint return, and whether the nonsigning spouse's income and expenses were reported on the joint return. See, e.g., Ashworth v. Commissioner, T.C. Memo. 1990-423. Here petitioners have regularly filed joint Federal income tax returns. Furthermore, Mrs. Conley's gambling income was reported on the 1984 return, and she received benefits from that return. It is our view that Mrs. Conley consented to the filing of petitioners' 1984 joint Federal income tax return. Although she did not participate in the return preparation, did not review its contents, and did not *244 sign the return, Mrs. Conley did, in effect, authorize her husband to sign for her. During their marriage, she voluntarily authorized Mr. Conley to "take care" of all their record-keeping and the filing of their Federal income tax returns. Hence, we conclude that Mrs. Conley consented to be bound by the 1984 joint return regardless of whether she actually signed it or not. Accordingly, she is liable for the 1984 deficiencies unless she qualifies as an innocent spouse for that year. B. Innocent Spouse
When a husband and wife file a joint return, they are, in general, jointly and severally liable for the tax due thereon and for any resulting additions to tax. Secs. 6013(d)(3), 6662(a)(2). Section 6013(e) provides relief from this rule in the case of an "innocent spouse". [8] An innocent spouse will be relieved of liability if the following elements of section 6013(e)(1) are met: (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason *245 to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, * * *.
All four statutory requirements must be met for the taxpayer to be afforded relief. Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Estate of Jackson v. Commissioner, 72 T.C. 356, 360 (1979). The taxpayer bears the burden of proving that each element has been satisfied. Rule 142(a); Sonnenborn v. Commissioner, 57 T.C. 373, 381-383 (1971). Mrs. Conley fails the section 6013(e)(1)(C) requirement that she did not know and had no reason to know of the understatement. See Adams v. Commissioner, 60 T.C. 300 (1973); *246 Sonnenborn v. Commissioner, supra. Respondent argues that Mrs. Conley's testimony that she had no actual knowledge of petitioners' understatement is contrary to the evidence. We agree. The issue is factual. To prevail, a spouse must prove a lack of knowledge and reason to know of the transaction itself, and not of the tax consequences resulting from the transaction. Bokum v. Commissioner, 94 T.C. 126, 148 (1990); Smith v. Commissioner, 70 T.C. 651, 673 (1978). To prove that she had no reason to know of the understatement, Mrs. Conley must convince us that a reasonably prudent person with her knowledge of the surrounding circumstances would not and should not have known of the understatement, keeping in mind her level of intelligence, education, and experience. Cf. Sanders v. United States, 509 F.2d 162, 166-167 (5th Cir. 1975). In our judgment Mrs. Conley had actual knowledge of the extent of both her and her husband's gambling winnings and losses. She knew or had reason to know of the transactions giving rise to the understatement. She personally participated in gambling activities, both *247 at the racetrack with her husband, and through "call-a-bet". Three Forms W-2G issued to her were attached to petitioners' joint 1984 return. She was aware that gambling winnings are treated as gross income and must be included on Federal income tax returns, and that to be deductible gambling losses must be substantiated. Thus, we hold that Mrs. Conley has not met her burden of showing that there were no facts within her knowledge, or as to which she was reasonably chargeable with knowledge or notice, from which a prudent taxpayer would have known of the substantial understatement of tax in the 1984 joint return. She fails to qualify as an innocent spouse under section 6013(e)(1)(C). Furthermore, Mrs. Conley has not satisfied the requirement of section 6013(e)(1)(D). Whether it is inequitable to hold a spouse liable for a deficiency in tax is determined on the basis of all the facts and circumstances. Sec. 1.6013-5(b), Income Tax Regs. Mrs. Conley has failed to present any evidence from which we could conclude that it is inequitable to hold her liable for the deficiency and additions to tax. To the contrary, based on all the evidence before us, we conclude that petitioners *248 are jointly and severally liable for their 1984 deficiency and additions to tax. In sum, Mrs. Conley neither persuaded us that she did not have actual knowledge and reason to know of the substantial understatement, nor that it would be inequitable to hold her liable for the deficiency and additions to tax. It therefore follows that she is not entitled to relief as an innocent spouse under section 6013(e). To reflect concessions and our conclusions on the disputed issues, Decision will be entered under Rule 155. Footnotes
1. For 1987, the additions to tax for negligence are codified under section 6653(a)(1)(A) and (B)↩.
2. Respondent also conceded certain deductions claimed on petitioners' 1984 Federal income tax return. Specifically, she conceded deductions for mortgage interest, charitable contributions, and taxes paid. With regard to this last item, petitioners argued at trial that they are entitled to a deduction for taxes paid in excess of the amount stated on their return. However, since they did not properly raise this issue in their pleadings, we have not considered it. Further, in the Stipulations of Facts, the parties agreed (1) that petitioners understated their 1984 taxable income because of a $ 1,000 mathematical error, and (2) that petitioners are entitled to certain business expense deductions for 1984. ↩
3. Unless indicated otherwise, all section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
4. The issue of innocent spouse relief was first raised by petitioner Gloria Handley Conley in a motion filed at calendar call. Respondent did not object to this motion. The Court in effect granted this motion at trial, and accepted evidence on this issue. See Rule 41(a).↩
5. The Court permitted petitioners to submit limited additional evidence after the trial of this case. Accordingly, petitioners submitted the depositions of Walter Bedford and Edwin C. Lester, friends of Mr. Conley, who had accompanied him to different racetracks. These depositions were submitted to corroborate petitioners' contention that Mr. Conley frequently visited racetracks, where he lost large sums of money.↩
6. These amounts are based on 14 Forms W-2G that petitioners attached to their 1984 joint return. The Forms W-2G were issued to them by River Downs, Kentucky Jockey Club, Louisville Downs, and Churchill Downs. Petitioners reported $ 34,051 of wagering winnings on their 1984 return. However, the Forms W-2G add-up to a total of $ 34,049. ↩
7. Respondent did not stipulate that these losing tickets are in fact records of petitioners' wagering activities.↩
8. As amended by the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 494, 801, applicable to all pending cases.↩