T.C. Memo. 2012-128


UNITED STATES TAX COURT



ARMANDO RIOS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 3861-09.                    Filed May 2, 2012.



        P failed to timely file tax returns for his 2003, 2005, 2006, and
2007 tax years.  R prepared substitutes for returns and issued notices of
deficiency determining P had received unreported income and was
liable for income tax deficiencies and additions to tax under I.R.C.
secs. 6651(a)(1) and (2) and 6654.

        <u>Held</u>:  Respondent's determinations are sustained.



<u>Isauro A. Villarreal</u>, for petitioner.

<u>Kimberly A. Santos</u>, for respondent.

MEMORANDUM OPINION

WHERRY, <u>Judge</u>: This case is before the Court on a petition for redetermination of income tax deficiencies and additions to tax respondent determined for petitioner's 2003, 2005, 2006, and 2007 tax years. After concessions by petitioner, the issues remaining for decision are (1) whether petitioner is entitled to gambling loss deductions claimed for the 2003 and 2006 tax years, (2) whether petitioner is entitled to business expense deductions claimed for the 2003 and 2005 tax years, (3) whether petitioner is entitled to exclude cancellation of indebtedness income received during the 2006 tax year, and (4) whether petitioner is entitled to exemptions in excess of those respondent allowed for the years at issue.[1]

---

[1]Petitioner has conceded that to the extent it is determined that there is a deficiency in income tax for any of the years at issue, he is liable for the additions to tax under secs. 6651(a)(1) and (2) and 6654.

Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

This case was submitted fully stipulated pursuant to Rule 122. The parties' stipulation of facts, with accompanying exhibits, is incorporated herein by this reference. Petitioner resided in California at the time he filed his petition.

Petitioner did not timely file tax returns for the 2003, 2005, 2006, and 2007 tax years. Thereafter, respondent on June 25, 2008, prepared substitutes for returns pursuant to section 6020(b) and issued petitioner a notice of deficiency dated November 5, 2008, showing the following income tax deficiencies and additions to tax.

|  |  | Additions to Tax | | |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
| 2003 | $461,511 | $103,839 | $115,377 | $11,907 |
| 2005 | 167,549 | 37,698 | to be determined | 6,720 |
| 2006 | 111,695 | 25,131 | to be determined | 5,285 |
| 2007 | 7,379 | 1,328 | to be determined | 335 |

On February 5, 2009, respondent received from petitioner Forms 1040, U.S. Individual Income Tax Return, for the 2003, 2005, and 2006 tax years, which were all signed by petitioner. In each of the Forms 1040 petitioner reported the gross

income determined for the respective year in respondent's notice of deficiency.[2]

Petitioner then claimed gambling loss deductions and State income tax deductions on Schedules A, Itemized Deductions, other business expense deductions on Schedules C, Profit or Loss from Business, and exclusions from income, zeroing out his reported taxable income.

Petitioner also conceded by stipulation that he was liable for unreported income for the 2003, 2005, 2006, and 2007 tax years in the amounts respondent determined (and reported on petitioner's late-filed Forms 1040 for the 2003, 2005,

---

[2]Although the record is unclear, respondent apparently determined petitioner had two businesses, the income from and expenses for which should be reported on Schedule C, Profit or Loss From Business (Schedules C-1 and C-2). For the 2003 tax year respondent determined petitioner had $86,600 of gambling winnings, $167,811 of Schedule C-2 gross receipts, and $1,004,903 of Schedule C-1 gross receipts from cash transaction funds. For the 2005 tax year respondent determined petitioner had $465,100 of Schedule C-1 gross receipts from cash transaction funds. For the 2006 tax year respondent determined petitioner had $27,540 of gambling winnings, $186,600 of Schedule C-1 gross receipts from cash transaction funds, and $110,140 of cancellation of indebtedness income.

On his 2006 Form 1040 petitioner reported $214,140 of gambling income, which is the sum of $27,540 and $186,600. While petitioner did not report cancellation of indebtedness income on his 2006 Form 1040, he attached Form 982, Reduction of Tax Attributes Due to Discharge of Indebtedness (and Section 1082 Basis Adjustment), on which he claimed a reduction of tax attributes due to discharge of indebtedness income of $110,140.

and 2006 tax years).[3] The record in this case is sparse, consisting solely of a stipulation of settled issues, filed September 17, 2010, and a stipulation of facts, filed December 16, 2010, with four attached exhibits. The stipulation of settled issues is now denominated Exhibit 4-J. Petitioner did not submit an initial brief.

## Discussion

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is improper. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner in certain circumstances. Petitioner has neither alleged that section 7491(a) applies nor established his compliance with the substantiation and recordkeeping requirements. See sec. 7491(a)(2)(A) and (B). Petitioner therefore bears the burden of proof.

Petitioner has conceded he received income which he failed to timely report, leaving the main issue in this case to be whether he is entitled to offsetting deductions claimed on his three late-filed Forms 1040. Deductions are a matter of legislative grace, and taxpayers bear the burden of proving entitlement to any

---

[3]For the 2007 tax year respondent determined petitioner had $19,805 of Schedule C-2 gross receipts and $12,545 of Schedule C-1 gross receipts from cash transaction funds. Petitioner did not submit a Form 1040 for the 2007 tax year.

claimed deduction. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). Taxpayers are required to identify each deduction and show that they have met all requirements as well as to keep books or records to substantiate all claimed deductions. Sec. 6001; Roberts v. Commissioner, 62 T.C. 834, 836-837 (1974); sec. 1.6001-1(a), Income Tax Regs.

I.      Gambling Loss Deductions

Petitioner conceded on the basis of Forms W-2G, Certain Gambling Winnings, that he received $86,600 and $214,140 of gambling winnings for the 2003 and 2006 tax years, respectively. The issue is whether petitioner is entitled to offset this income with gambling loss deductions of $86,600 and $214,140 claimed for the 2003 and 2006 tax years, respectively.

In the case of a taxpayer not engaged in the trade or business of gambling, gambling losses are allowable as an itemized deduction, but only to the extent of gains from gambling transactions. Sec. 165(d); sec. 1.165-10, Income Tax Regs.; see also Norgaard v. Commissioner, 939 F.2d 874, 878 (9th Cir. 1991), aff'g in part, rev'g in part T.C. Memo. 1989-390; Briseno v. Commissioner, T.C. Memo. 2009-67.

To establish entitlement to a deduction for gambling losses the taxpayer must prove the losses sustained during the taxable year. Mack v. Commissioner, 429 F.2d

182,184 (6th Cir. 1970), aff'g T.C. Memo. 1969-26; see also Mayer v.

Commissioner, T.C. Memo. 2000-295, aff'd, 29 Fed. Appx. 706 (2d Cir. 2002). The

Commissioner has suggested that gamblers regularly maintain a diary, supplemented

by verifiable documentation, of gambling winnings and losses. See Rev. Proc. 77-

29, 1977-2 C.B. 538.

Petitioner did not testify, and if he did keep a diary or log, it was not provided

to this Court. The only evidence of petitioner's claimed gambling losses is Exhibits

2-J and 3-J. Exhibit 2-J consists of two pages, each page containing a date, a series

of numbers, petitioner's name and address, and an amount of money. The exhibit

does not contain the name of a casino, there are no headings depicting what the

amounts of money represent, and the entire document is apparently six pages long,

although the Court was provided only with the first two pages. Exhibit 3-J is five

pages long, each page representing a different year. The name Table Mountain

Casino is present on each page along with different columns for slot activity, table

activity, and total activity. There is a disclaimer at the bottom of each page stating:

"This win loss statement reflects the estimated win and/or loss provided from the

casino management system." For 2003 the win loss statement shows gambling

winnings of $440,600 and gambling losses of $469,217 for a net loss of $28,617.

For 2006 the win loss statement shows gambling winnings of $148,650 and gambling losses of $199,011 for a net loss of $50,361.[4]

---

[4]If the Table Mountain Casino Exhibit 3-J is accurate as to winnings of $440,600 for 2003, petitioner must have had a lot of winnings not reported on Forms W-2G in 2003 in order to have total winnings for 2003 per Form W-2G of only $86,600. Form W-2G states:

> The payer must furnish a Form W-2G to you if you receive:
>     1. $1,200 or more in gambling winnings from bingo or slot machines;
>     2. $1,500 or more in proceeds (the amount of winnings minus the amount of the wager) from keno;
>     3. More than $5,000 in winnings (reduced by the wager or buy-in) from a poker tournament;
>     4. $600 or more in gambling winnings (except winnings from bingo, keno, slot machines, and poker tournament) and the payout is at least 300 times the amount of the wager; or
>     5. Any other gambling winnings subject to Federal income tax withholding.

Small winnings are not reported on Form W-2G but are nevertheless taxable. Estimates of these winnings may also be tracked by a casino's management system, which may, inter alia, monitor "members" and "slot club card" activities. The net effect for 2003 is that per petitioner's and respondent's joint Exhibit 3-J petitioner's taxable winnings would be $440,600 for 2003, but petitioner is being taxed on only $86,600. Therefore, in effect respondent has allowed gambling losses of $354,000 for 2003 (i.e., $440,600 of winnings - $86,600 of reported winnings = $354,000). While this is considerably less than the Exhibit 3-J estimated loss of $469,217 it is not inappropriate here under the Cohan rule, where estimates are to bear heavily against the taxpayer who has caused the problem by his failure to keep the records required by sec. 6001, sec. 1.6001-1(a), Income Tax Regs., and Rev. Proc. 77-29, 1977-2 C.B. 538. As to 2006, joint Exhibit 3-J shows Table Mountain Casino's estimate of $148,650 of total winnings. Petitioner's Form W-2G reported winnings

(continued...)

As a general rule, if the trial record provides sufficient evidence that the taxpayer has incurred a deductible expense, but the taxpayer is unable to substantiate adequately the precise amount of the deduction to which he or she is otherwise entitled, the Court may where there is credible evidence on which an estimate may be made estimate the amount of the deductible expense. This Court may then allow the deduction to that extent. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). In these instances, the Court may make as close an approximation of the allowable expense as it can, bearing heavily against the taxpayer whose inexactitude is of his or her own making. Cohan v. Commissioner, 39 F.2d at 544.

We regard it as a virtual certainty that petitioner, playing a game of chance frequently over the course of several years, placed many losing bets in addition to his winning ones. See Briseno v. Commissioner, T.C. Memo. 2009-67 (allowing taxpayer gambling losses on "the virtual certainty that she placed many losing bets during her years of playing slot machines"). However, there is nothing in the record on which we can make an estimate of petitioner's gambling losses. Exhibit 3-J shows gambling losses of $469,217 and $199,011 for the 2003 and 2006 tax years,

---

[4](...continued)
of $214,140. This evidences to the Court that petitioner had winnings from casinos other than Table Mountain Casino about which there is nothing in the record.

respectively. However, the document itself says that it is only an estimate. And importantly, while Exhibit 3-J shows gambling winnings of $440,600 for the 2003 tax year, petitioner conceded and respondent accepted that he received only $86,600 in gambling winnings for the 2003 tax year. Petitioner could have testified or filed an initial brief and explained what went on with his gambling winnings and losses. But he chose not to.[5] Accordingly, we sustain respondent's determination on this issue.

## II. Business Expense Deductions

On Schedule C attached to his 2003 Form 1040 petitioner reported "MONEY TRANSFERS" as his principal business or occupation and reported $167,811 in gross receipts or sales and $1,004,903 in other income. He then claimed a $1,172,714 deduction for other expenses explained as "1099 & MONEY TRANSFERS TO RIOS & SONS FARM LABOR SERVICE". On Schedule C attached to his 2005 Form 1040 petitioner reported other income of $465,100 and claimed a deduction of $465,100. He again listed money transfers as his business or

---

[5]As stated, we regard it as a certainty petitioner incurred some gambling losses. In other cases where the IRS allowed some gambling losses, we have disallowed gambling losses in excess of those allowed. We wish this case were the same. But unfortunately, respondent allowed no losses and we have no basis on which to estimate them. See Hardwick v. Commissioner, T.C. Memo. 2007-359 (disallowing taxpayer losses in excess of $170,215 already allowed by the IRS).

profession, and again the claimed deduction was for transfers to Rios & Sons Farm Labor Service.

Section 162(a) allows deductions for ordinary and necessary business expenses. A business expense is ordinary for purposes of section 162 if it is normal or customary within a particular trade, business, or industry and is necessary if it is appropriate and helpful for the development of the business. See Commissioner v. Heininger, 320 U.S. 467, 471 (1943); Deputy v. du Pont, 308 U.S. 488, 495 (1940). The claimed deductions were from 1099 and money transfers to Rios & Sons Farm Labor Service. There is no evidence in the record that shows these transfers would be ordinary and necessary business expenses or that the money was actually transferred. Even if the expenses could be said to be ordinary and necessary, there is absolutely nothing in the record to substantiate the claimed deductions. See Vanicek v. Commissioner, 85 T.C. at 743. Accordingly, we sustain respondent's determination.

III.    Cancellation of Indebtedness Income

Petitioner received $110,140 of cancellation of indebtedness income related to his residence for the 2006 tax year. On Form 982 attached to his 2006 Form 1040, he reported the $110,140 of cancellation of indebtedness income should be excluded

from income and that the basis in his principal residence was being reduced by this amount.

Section 61(a)(12) provides the general rule that gross income includes income from cancellation of indebtedness.  The includable amount is the difference between the face value of the debt and the amount paid in satisfaction of the debt.  Babin v. Commissioner, 23 F.3d 1032, 1034 (6th Cir. 1994), aff'g T.C. Memo. 1992-673.  The income is recognized in the year the cancellation occurs.  Montgomery v. Commissioner, 65 T.C. 511, 520 (1975).

Section 108 contains an exception.  On the basis of the Form 982 attached to petitioner's 2006 Form 1040, it appears he is arguing that section 108(a)(1)(E) and (h) applies and that the cancellation of indebtedness income is excluded from income.  Section 108(a)(1)(E) currently provides:  "Gross income does not include any amount which * * * would be includable in gross income by reason of the discharge (in whole or in part) of indebtedness of the taxpayer if * * * the indebtedness discharged is qualified principal residence indebtedness".  And section 108(h) then provides special rules relating to qualified principal residence indebtedness.  However, section 108(a)(1)(E) and (h) did not exist in 2006.  It was added by the Mortgage Forgiveness Debt Relief Act of 2007, Pub. L. No. 110-142, sec. 2(a) and (b), 121 Stat. at 1803, and applies only to discharges of indebtedness

on or after January 1, 2007.[6] Therefore, this exception cannot apply to petitioner's 2006 taxable year cancellation of indebtedness income, and accordingly we sustain respondent's determination on this issue.

## IV. Standard Deduction and Personal Exemption

With the overall exception of a State income tax deduction for 2006, the only itemized deductions petitioner claimed for any year at issue here were gambling loss deductions. There is no evidence to support a State income tax deduction, and petitioner is therefore not entitled to one. The result is that petitioner is not advantaged by claiming itemized deductions in lieu of the standard deduction for any of the years at issue.

On petitioner's Forms 1040 for his 2003, 2005, and 2006 tax years he claimed one exemption for himself. On brief respondent states that petitioner "has presented no evidence to show that he is entitled to a dependent exemption" and argues that he should not be allowed any "exemptions in excess of the amounts allowed by respondent for the taxable years at issue." While we agree with respondent that petitioner is entitled to only one exemption per year for all years at issue, we find it

---

[6]The Form 982 attached to petitioner's 2006 Form 1040 was not the 2006 version of Form 982. Apparently, petitioner used the 2008 version of Form 982.

curious that respondent addresses this issue, considering petitioner never claimed he was entitled to more than one exemption per year.

The Court has considered all of petitioner's and respondent's contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.