T.C. Summary Opinion 2016-73

UNITED STATES TAX COURT

PETER PHUONG K. PHAM AND BACH T. NGUYEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18289-15S.                          Filed November 8, 2016.

Peter Phuong K. Pham and Bach T. Nguyen, pro sese.

<u>Hans Famularo</u> and <u>Mindy S. Meigs</u>, for respondent.

SUMMARY OPINION

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to

the provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not

_____

[1]Unless otherwise indicated, subsequent section references are to the

(continued...)

reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated April 20, 2015, respondent determined a deficiency in petitioners' Federal income tax of $3,922 for tax year 2013. After concessions,[2] the issue for decision is whether and to what extent petitioners incurred deductible gambling losses.

## Background

Some of the facts have been stipulated, and we incorporate the stipulation of facts by this reference. Petitioners resided in California when the petition was timely filed.

Peter Phuong K. Pham (petitioner husband) and Bach T. Nguyen (petitioner wife) each were employed by El Dorado Enterprises d.b.a. Hustler Casino (Hustler Casino) as a house player or host (house player) during part of the year at issue.

The parties agree that casinos sometimes hire house players to ensure that there are enough players to start and maintain card games or to gain an additional

---

[1](...continued)
Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioners concede that they received $16,800 of unreported gambling winnings income in 2013.

source of revenue from the player's winnings.[3]  Petitioners explained that as house players for Hustler Casino they would start a game of "Texas Hold 'Em" poker (Texas Hold 'Em).  The goal was to attract other players/customers.  Petitioners each received an hourly wage.[4]

Petitioners further explained that they were required by Hustler Casino to use their own funds for betting in the games of poker, including paying the same table fees as customers not employed by that casino.  The table fees included a regular table fee of $5 per hand and a collection for a "bad beat jackpot", which was $1 per hand.  Hustler Casino set aside one dollar from each hand for the bad beat jackpot.  Under certain circumstances not described in this record, Hustler Casino would decide that a player had "hit the jackpot".  Hustler Casino would

---

[3]The parties stipulated a copy of a printout from the PokerZone Web site which provides the following definition of a house player:  "A[n] player who is employed by the casino or cardroom; a proposition player, stake player, or shill * * * [c]ardrooms sometimes employ house players in order to ensure that there are enough players to start and maintain games or to gain an additional source of revenue from the player's winnings."

[4]Petitioners asserted at trial that they believe they were paid $15 per hour in 2013.

then redistribute the accumulated bad beat jackpot funds to the winner of that jackpot.[5]

Petitioners estimate that they each played six hours per day, 21 days a month, for seven months in 2013. Petitioners brought their own funds to play poker each day. When petitioners won, they would receive chips from Hustler Casino. They used chips for further gambling or cashed them in. Petitioners assert that Hustler Casino did not reimburse them for table fees, bad beat jackpot fees, or gambling losses incurred in their respective roles as house players. Petitioners assert that initially they tried to keep track of their poker winnings and losses by writing down the amount won or lost at the end of each day, but after a while they gave up that practice because it is "bad for your psyche * * * you need to be strong mentally" when playing cards.

Hustler Casino did not train petitioners to play poker, nor did it require them to pass an exam relating to their poker skills in order to be hired as house players; instead they were hired to sit at poker tables and play cards. According to

[5]The parties also stipulated a copy of the law enforcement advisory from the California Division of Gambling Control dated May 24, 1999, titled "Jackpot Poker". This advisory describes how jackpot poker games involve having a fixed sum of money withdrawn at each game and placed into the jackpot fund. When a particular combination of cards is achieved, the player with that hand wins all the funds in the jackpot. The advisory also mentions that "[s]ome variations include" bad beat jackpots.

petitioners, Hustler Casino wanted players who would look neat and make a good appearance for the game. Petitioners asserted at trial that Hustler Casino would not hire "professional gamblers" because such persons would win too much and could not be trusted.

Petitioners together received $16,800 in gambling winnings from Hustler Casino as house players in 2013. Occasionally petitioners gambled at other casinos. In October 2013 petitioners won $6,600 from Commerce Casino. Petitioners' gambling activity at Commerce Casino was recreational, and they were not house players there.

Petitioners resigned from their positions as house players for Hustler Casino in July 2013. Petitioners' income for 2013 consisted of wages from Hustler Casino, gambling winnings from both Hustler Casino and Commerce Casino, and a California State income tax refund. Since resigning from their positions at Hustler Casino, petitioner husband has retired and receives Social Security benefits while petitioner wife performs odd jobs.

Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for 2013. On their Form 1040 they reported $15,402 in total wage income ($6,641 for petitioner husband and $8,671 for petitioner wife) from Hustler Casino and the $6,600 of gambling winnings from Commerce Casino. Petitioners

received a Form 1099-MISC, Miscellaneous Income, from Commerce Casino issued to petitioner wife reflecting the $6,600 in gambling winnings. Petitioners also received a Form W-2G, Certain Gambling Winnings, issued to petitioner wife for the $16,800 in winnings from Hustler Casino. Petitioners did not report the $16,800 on their Form 1040. Petitioners claimed a standard deduction of $13,400.

Respondent issued the notice of deficiency including the $16,800 in gambling winnings from Hustler Casino in petitioners' taxable income for 2013. Petitioners timely filed a petition asserting that they did not report this income because their gambling losses as house players at Hustler Casino exceeded their gambling winnings. Petitioners assert that they were forced to resign from their positions as house players in July 2013 for this reason. Petitioners estimate that they had each lost $1,000 per month for seven months on Texas Hold 'Em games played in their roles as house players. They also assert that they paid an estimated $7,056 into the bad beat jackpot and that their gambling losses totaled $21,056.[6] Petitioners have not provided any receipts or other documentation of these fees or losses.

---

[6]Petitioners estimate that Hustler Casino collects on average $4 per player per hour in bad beat jackpot fees. Therefore, $4 per hour × six hours per day × 21 days per month × seven months × two house players = $7,056 in bad beat jackpot fees.

## Discussion

I.    Burden of Proof

In general, the Commissioner's determination set forth in a notice of deficiency is presumed correct, and the taxpayer bears the burden of proving that the determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters shifts to the Commissioner under certain circumstances. Petitioners did not allege or otherwise show that section 7491(a) applies and have not shown that they are in compliance with the substantiation and recordkeeping requirements of that section. See sec. 7491(a)(2)(A) and (B). Therefore, petitioners bear the burden of proof. See Rule 142(a).

In unreported income cases, the Commissioner must base the deficiency on some substantive evidence that the taxpayer received unreported income. Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97; Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985). If the Commissioner introduces some evidence that the taxpayer received unreported income, the burden shifts to the taxpayer. Hardy v. Commissioner, 181 F.3d at 1004; Rapp v. Commissioner, 774 F.2d at 935. The parties stipulated a Form W-2G issued by Hustler Casino, and petitioners admitted to receiving the gambling winnings.

Since petitioners acknowledge receipt the only issue before us is whether they are entitled to deductions for gambling losses. See Hardy v. Commissioner, 181 F.3d at 1004; Rapp v. Commissioner, 774 F.2d at 935.

II. Gambling Winnings and Losses

Gross income includes all income from whatever source derived, including gambling. See sec. 61; McClanahan v. United States, 292 F.2d 630, 631-632 (5th Cir. 1961). Taxpayers who are "professional gamblers" engaged in the trade or business of gambling may deduct their gambling losses up to the amounts of their gains to arrive at adjusted gross income. See secs. 61(a)(1), 165(d); Boneparte v. Commissioner, T.C. Memo. 2015-128. In the case of taxpayers not engaged in the trade or business of gambling, such losses are allowable as an itemized deduction, but only to the extent of gains from gambling transactions. Sec. 165(d); McClanahan, 292 F.2d at 632.

Section 162(a) allows as a deduction all ordinary and necessary expenses paid or incurred in carrying on any activity that constitutes a trade or business. An individual may be in the trade or business of being an employee. Primuth v. Commissioner, 54 T.C. 374, 377 (1970). A taxpayer employee can deduct business expenses if he can prove he was not eligible for reimbursement by his employer and was not reimbursed. Heidt v. Commissioner, 274 F.2d 25, 26 (7th

Cir. 1959), aff'g T.C. Memo. 1959-31. Unreimbursed employee expenses are deductible as miscellaneous itemized deductions on Schedule A, Itemized Deductions, to the extent such expenses exceed 2% of the individual's adjusted gross income. Secs. 62(a)(2), 63(a), (d), 67(a) and (b), 162(a).

If an expense can be considered either a gambling loss under section 165(d) or a business expense under section 162, section 165(d) as the more specific statute controls. Boyd v. United States, 762 F.2d 1369, 1372-1373 (9th Cir. 1985).

While petitioners were employees of Hustler Casino and were paid a salary to play cards at the poker table, we might also view them as independent contractors to the extent that they gambled with their own funds, retained their winnings, and absorbed their losses. Regardless of whether petitioners were employees or independent contractors, they were engaged in a gambling activity and are required to substantiate their reported gambling losses. See Mack v. Commissioner, 429 F.2d 182, 184 (6th Cir. 1970), aff'g T.C. Memo. 1969-26; see also Mayer v. Commissioner, T.C. Memo. 2000-295, aff'd, 29 F. App'x 706 (2d Cir. 2002). Accordingly we first look to the issue of whether petitioners substantiated their reported gambling losses.

Deductions and credits are a matter of legislative grace, and taxpayers must prove entitlement to the deductions and credits claimed.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); LaPoint v. Commissioner, 94 T.C. 733, 736-737 (1990).  Taxpayers are required to identify each deduction, show that they have met all requirements, and keep books or records to substantiate items underlying all claimed deductions.  Sec. 6001; Roberts v. Commissioner, 62 T.C. 834, 836-837 (1974); sec. 1.6001-1(a), Income Tax Regs.  To establish entitlement to a deduction for gambling losses the taxpayer must prove the losses sustained during the taxable year.  Mack v. Commissioner, 429 F.2d at 184; see also Mayer v. Commissioner, T.C. Memo. 2000-295.  The Commissioner has suggested that gamblers regularly maintain a diary, supplemented by verifiable documentation, of gambling winnings and losses.  See Rev. Proc. 77-29, 1977-2 C.B. 538.  A taxpayer's "contention that it was too difficult for him to maintain contemporaneous records of his gambling activities is without merit."  Kalisch v. Commissioner, T.C. Memo. 1986-541, 52 T.C.M. (CCH) 991, 995 (1987); see also Schooler v. Commissioner, 68 T.C. 867, 870-871 (1977).

When a taxpayer establishes that he paid or incurred a deductible expense but does not establish the amount of the expense, we may estimate the amount allowable in some circumstances.  Cohan v. Commissioner, 39 F.2d 540 (2d Cir.

1930).  In order for the Court to estimate the amount of the expense, the Court must have some basis upon which an estimate can be made.  See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).  In estimating the amount allowable the Court bears heavily upon the taxpayer who failed to maintain required records and to substantiate expenses as the Code requires.  See Cohan v. Commissioner, 39 F.2d at 544; Keenan v. Commissioner, T.C. Memo. 2006-45, aff'd, 233 F. App'x 719 (9th Cir. 2007).

We have held that where a taxpayer failed to keep a record of either winnings or losses from gambling and did not otherwise have evidence of losses, he could not deduct gambling losses.  Schooler v. Commissioner, 68 T.C. at 871. The Court has estimated gambling losses using the test set forth in Cohan in a limited situation in which the taxpayer did not provide records of gambling wins and losses but did provide evidence of his modest income and lifestyle and copies of his bank deposits and disbursements.  Doffin v. Commissioner, T.C. Memo. 1991-114, 61 T.C.M. (CCH) 2157, 2161-2162 (1991); see also Jones v. Commissioner, T.C. Memo. 2011-77, 2011 WL 1235228, at *2.  The Court was

able to estimate the taxpayer's losses on the basis of this evidence, which corroborated his testimony. Doffin v. Commissioner, 61 T.C.M. (CCH) at 2161-2162.

Petitioners assert that they incurred $14,000 in Texas Hold 'Em poker gambling losses in 2013 on the basis of their estimate that they each lost $1,000 per month over a seven-month period, but they did not provide any documentation or other proof to support their estimated losses. Petitioners also assert they incurred $7,056 in gambling losses, estimated from the $1-per-hand fees for the bad beat jackpot and the number of hours they worked.

Petitioners have not provided evidence of their losses, such as a personal log of daily winnings and losses, win/loss statements, or bank records. Although petitioners had a modest income in 2013, they did not provide testimony or other evidence at trial to corroborate the claimed losses. See Jones v. Commissioner, 2011 WL 1235228, at *2; Doffin v. Commissioner, 61 T.C.M. (CCH) at 2161-2162. Further, we are not satisfied with petitioners' assertion that it was too difficult to maintain their log documenting their gambling winnings and losses. See Schooler v. Commissioner, 68 T.C. at 870-871; Kalisch v. Commissioner, 52 T.C.M. (CCH) at 995; Rev. Proc. 77-29, supra. Petitioners failed to maintain the required tax records and have failed to provide the Court with a basis upon which

their gambling losses for the year at issue could be estimated.[7]  See Williams, 245

F.2d at 559; Cohan v. Commissioner, 39 F.2d at 544; Vanicek v. Commissioner,

85 T.C. at 743; Keenan v. Commissioner, T.C. Memo. 2006-45.

We have considered all of the parties' arguments, and, to the extent not

addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.

---

[7]We note that petitioners did not file a Schedule C, Profit or Loss From Business, to report their gambling winnings and losses, nor did they claim that they were "professional gamblers".  Consequently, any allowable gambling loss deduction could be claimed as an itemized deduction.  See sec. 165(d); McClanahan v. United States, 292 F.2d 630, 632 (5th Cir. 1961).  The Court found petitioners' testimony estimating the amount of bad beat jackpot fees, $7,056, credible.  For this reason the Court considered allowing petitioners a gambling loss deduction of $7,056.  See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).  Because petitioners' standard deduction for 2013, $13,400, far exceeds this amount, such an allowance would not benefit petitioners' bottom line of tax due.