T.C. Summary Opinion 2017-5

UNITED STATES TAX COURT

EMAD ALABSI AND YANA I. DAEVIDOFF, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19892-11S.                    Filed February 6, 2017.

Emad Alabsi and Yana I. Daevidoff, pro sese.

Shawna A. Early, for respondent.

SUMMARY OPINION

GALE, Judge:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code of 1986 as in effect for the year at issue, and all Rule references are
to the Tax Court Rules of Practice and Procedure.  Some dollar amounts are
rounded to the nearest dollar.

to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $9,147 and an accuracy-related penalty under section 6662(a) of $1,829 with respect to petitioners' Federal income tax for taxable year 2009. The issues for decision are: (1) whether petitioners had unreported gambling income of $40,395; (2) whether petitioner Emad Alabsi was engaged in the trade or business of gambling; (3) whether petitioners may deduct wagering losses against their wagering gains; (4) whether petitioners are entitled to deduct travel expenses related to Mr. Alabsi's gambling activity; and (5) whether petitioners are liable for an accuracy-related penalty under section 6662(a) for 2009.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Ohio at the time they filed their petition.

For several years preceding 2009 Mr. Alabsi regularly played poker at poker tournaments. From late 2003 through 2010 he won monetary prizes 30 times, for total winnings of $858,447 during that period. To participate in a poker tournament, Mr. Alabsi was required to pay an entry fee and a buy-in. The poker

tournament organizer retained the entry fee, and the buy-in amounts were paid out to the winners at the end of a tournament.

During 2009 Mr. Alabsi participated in poker tournaments at the Borgata Hotel Casino and Spa (Borgata) in Atlantic City on the following dates, paying the entry fees and buy-ins listed in the following table.

| Date | Entry fee | Buy-in |
| --- | --- | --- |
| Jan. 14 | $50 | $350 |
| Jan. 15 | 60 | 500 |
| Jan. 15 | 30 | 150 |
| Jan. 17 | 90 | 100 |
| Jan. 19 | 30 | 150 |
| Jan. 20 | 30 | 160 |
| Jan. 20 | 60 | 500 |
| Jan. 21 | 30 | 150 |
| Jan. 21 | 40 | 320 |
| Jan. 23 | 50 | 300 |
| Jan. 25 | 200 | 3,000 |
| Mar. 22 | 150 | 1,500 |
| May 18 | 150 | 1,500 |
| June 18 | 80 | 1,000 |
| June 19 | 80 | 1,000 |
| June 22 | 60 | 500 |
| June 23 | 60 | 500 |
| June 26 | 80 | 1,000 |
| June 28 | 200 | 3,000 |
| Aug. 2 | 150 | 1,500 |
| Aug. 5 | 20 | 100 |
| Sept. 13 | 60 | 500 |
| Oct. 18 | 60 | 500 |
| Oct. 19 | 60 | 500 |

He won $2,209, $20,425, and $5,250 on the January 17, June 19, and August 2 Borgata visits, respectively (net of entry and buy-in fees). The Borgata issued a Form W-2G, Certain Gambling Winnings, for 2009 reporting the $20,425 of winnings but not the $2,209.[2] The record does not disclose whether the Borgata issued a Form W-2G reporting the $5,250 petitioner won on August 2, 2009.[3]

Mr. Alabsi also participated in poker tournaments--designated as "$540 No Limit Hold'em" contests–at the Bellagio Casino in Las Vegas (Bellagio) on the following dates, paying buy-ins (but no entry fees) as listed in the following table.[4]

| Date | Entry fee | Buy-in |
|---|---|---|
| July 9 | -0- | $540 |
| July 10 | -0- | 540 |
| July 10 | -0- | 540 |
| July 16 | -0- | 540 |

---

[2]The Form W-2G was issued by the Marina District Development Co., which gave its address as the same address as the Borgata. We therefore infer that the two entities are the same or closely related.

[3]A poker tournament sponsor is instructed to report on a Form W-2G any payment of more than $5,000 to a winning payee, after reduction for the amount of the wager or buy-in. See Rev. Proc. 2007-57, 2007-2 C.B. 547; Internal Revenue Service Instructions for Forms W-2G and 5754 (2009).

[4]The parties also stipulated the authenticity of two receipts showing that Mr. Alabsi had paid buy-ins as an "alternate" to participate in "$540 No Limit Hold'em" contests at the Bellagio on July 11 and 17, 2009. As the record does not disclose whether Mr. Alabsi in fact played--and if he did not, whether his buy-in was refunded--we conclude that petitioners have not shown that Mr. Alabsi paid these buy-ins.

He won $832 and $10,130 from the July 9 and July 16 Bellagio tournaments, respectively (net of the buy-in). The Bellagio issued a Form W-2G for 2009 reporting the $10,130 of winnings but not the $832.

Mr. Alabsi participated in a poker tournament on or about July 24 at the Mountaineer Racetrack and Casino in Chester, West Virginia (Mountaineer), and won $9,840. The Mountaineer issued a Form W-2G for 2009 reporting the $9,840 of winnings (net of entry fee and buy-in).

Mr. Alabsi also participated in a poker tournament during the weekend of April 18 and 19 in Cleveland, but the record does not disclose any further details.

Mr. Alabsi stayed in the hotel at the Borgata when participating in tournaments there. He stayed at the hotel on the following dates: March 22 to 24, May 17 to 20, June 17 to 29, July 31 through August 5, September 12 to 14, and October 17 to 20, 2009.[5] During his stays a substantial portion of his room and other charges was waived by the hotel.[6] He was charged for some room and other expenses, including in-room movies. After taking into account the charges that

---

[5]The record contains an invoice for Mr. Alabsi's March 22 to 24 stay at the Borgata hotel, but, in contrast to the other invoices, that invoice does not indicate whether Mr. Alabsi paid any of the listed charges. We accordingly disregard it.

[6]Respondent has not argued that any portion of the complimentary goods and services Mr. Alabsi received from the hotels at the gambling establishments are gains from a wagering transaction. See Libutti v. Commissioner, T.C. Memo. 1996-108.

were waived, the hotel invoices indicate for the May 17 to 20 stay, Mr. Alabsi paid $124.26 for accommodations, $73.79 of which was for in-room movies; for the June 17 to 29 stay, he paid $1,278.50 for accommodations, $220.30 of which was for in-room movies and $177.80 of which was for spa services; for the July 31 through August 5 stay, he paid $846.63 for accommodations, $95.18 of which was for in-room movies; for the September 12 to 14 stay, he paid $1,197.80 for accommodations, $36.36 of which was for in-room movies; and for the October 17 to 20 stay, he paid $336.37 for accommodations, $60.96 of which was for in-room movies.

In connection with his participation in poker tournaments at the Bellagio, Mr. Alabsi stayed at the hotel there from July 5 to 12, 2009.[7] The invoice for his hotel stay totaled $1,088, which he paid. In addition to room charges, the invoice covered in-room movie charges totaling $79 and in-room refreshment center charges for alcoholic beverages and mixers totaling $96. On his return flight home from the tournaments in Las Vegas, Mr. Alabsi paid a $40 baggage fee.

---

[7]Although the record establishes that Mr. Alabsi participated in a poker tournament at the Bellagio on July 16, 2009, there is no evidence of any accommodation expense after July 12, 2009.

Mr. Albasi stayed at the hotel inside the Mountaineer on July 24 to 25, 2009. A hotel invoice covering those dates shows a credit of $59.20 from a cash payment but does not itemize any expenses.[8]

Petitioners timely filed their Federal income tax return for 2009 (2009 return). They listed Mr. Alabsi's occupation as "consultant" and left the entry for Ms. Daevidoff's occupation blank. On a Schedule C, Profit or Loss From Business, attached to the 2009 return petitioners reported gross receipts of $20,045 and no business expenses with respect to a sole proprietorship operated by Mr. Alabsi, with the principal business listed as "consultant". They further reported self-employment tax due of $2,832 with respect to the $20,045 of business income reported on the Schedule C. After deducting one-half of the self-employment tax, the standard deduction, and exemptions, petitioners reported taxable income of zero. They claimed an earned income credit and other credits that fully offset their self-employment tax liability and resulted in a claimed overpayment of $4,996.

---

[8]In addition the parties stipulated the authenticity of hotel invoices issued to Yana Alabsi (presumably petitioner Yana I. Daevidoff, Mr. Alabsi's spouse) by the Marriott Fallsview Hotel covering April 29 through May 2 and August 26 to 29, 2009. The invoices do not include the hotel's location, but we take judicial notice that the Marriott Fallsview Hotel is in Niagara Falls, Ontario, Canada. There is no evidence in the record substantiating that Mr. Alabsi participated in poker tournaments in that vicinity at those times, and nothing on the invoices indicates any such participation. We accordingly disregard them.

The return was prepared by petitioners' accountant, Nashaat Antonious, who has a master's degree in accounting and had previously prepared tax returns for professional poker players. For purposes of preparing the return, Mr. Alabsi advised Mr. Antonious that his exclusive source of income in 2009 was his poker tournament winnings. He further advised Mr. Antonious that he did not have records of the expenses he incurred in order to play in poker tournaments. Mr. Antonious concluded that Mr. Alabsi was a professional poker player on the basis that poker was his exclusive source of income. Given the absence of expense records, Mr. Antonious advised petitioners to report the net income from the gambling activity on Schedule C as gross receipts but not to report any offsetting business expenses.

Respondent subsequently examined the 2009 return and issued petitioners a notice of deficiency determining that they had failed to report gambling income of $40,395, on the basis of three Forms W-2G received by respondent, see supra pp. 4-5, from the following payors: Marina District Development Co. for $20,425; Mountaineer Racetrack for $9,840; and Bellagio, LLC, for $10,130. Petitioners timely petitioned this Court for redetermination of the deficiency.

At the time of trial an online Web site devoted to tournament poker listed Mr. Alabsi as a notable player.

## Discussion

### I.    Unreported Income

Generally, the Commissioner's determinations in the notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that they are incorrect.  Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).[9] For determinations of unreported income, however, the Court of Appeals for the Sixth Circuit has held that before the notice of deficiency is entitled to the presumption of correctness, such determinations must be supported by at least a "minimal" factual predicate or foundation of substantive evidence linking the taxpayer to the income-producing activity.[10]  United States v. Walton, 909 F.2d 915, 918-919 (6th Cir. 1990); see also Garavaglia v. Commissioner, T.C. Memo. 2011-228, aff'd, 521 F. App'x 476 (6th Cir. 2013).  Once the Commissioner satisfies his burden, the taxpayer has the burden of proving error in the determinations.  See, e.g., Garavaglia v. Commissioner, T.C. Memo. 2011-228.

---

[9]Petitioners have not claimed and are not entitled to any shift in the burden of proof pursuant to sec. 7491(a).  To be eligible for such a shift, a taxpayer must have complied with all substantiation requirements of, and maintained all records required by, the Internal Revenue Code.  Sec. 7491(a)(2).  Petitioners have not done so.

[10]Because any appeal in this case, but for the provisions of sec. 7463, would lie to the Court of Appeals for the Sixth Circuit, see sec. 7482(b)(1)(A), the Court follows the precedent established in that circuit, see Golsen v. Commissioner, 54 T.C. 742, 756-757 (1970), aff'd, 445 F.2d 985 (10th Cir. 1971).

The record clearly establishes Mr. Alabsi's connection to gambling activities. Petitioners themselves assert that Mr. Alabsi is a professional poker player, and the record establishes that he received cash winnings from his participation in poker tournaments.[11] Respondent has therefore satisfied his burden of presenting predicate evidence linking petitioners with the unreported gambling income, and they bear the burden of proving that they did not receive the income determined in the notice of deficiency.

Petitioners concede that they received the $40,395 in wagering income as reported on the Forms W-2G. However, the parties disagree about whether the $20,045 of income that petitioners reported on their 2009 return as income from Mr. Alabsi's Schedule C business as a "consultant" constituted part of the gambling income reported on the Forms W-2G or whether it was additional income unrelated to his gambling activity. Petitioners urge that the $20,045 they reported on the return was Mr. Alabsi's gambling income reduced by his estimated gambling expenses, notwithstanding their Schedule C description of it as consulting income. Respondent seeks to hold petitioners to their return position

_____

[11]There is no dispute in this case that participation in a poker tournament is a "wagering transaction" within the meaning of sec. 165(d). See Tschetschot v. Commissioner, T.C. Memo. 2007-38 (rejecting taxpayer's argument that tournament poker is not a wagering activity).

that they had $20,045 of income from a consulting business unrelated to gambling, plus an additional $40,395 of unreported income from gambling.

On the basis of Mr. Alabsi's and his accountant's testimony and the entire record, we agree with petitioners. Other than the reference on the Schedule C to Mr. Alabsi's business as a "consultant", there is no evidence that Mr. Alabsi engaged in any consulting activities for compensation during 2009. He denied doing so. When called upon to explain why Mr. Alabsi's business was described as that of a "consultant" on the Schedule C, both he and his accountant dissembled. In the circumstances, we conclude that the business was described this way in a misguided attempt to head off the closer scrutiny of the return that would likely be triggered by a description of Mr. Alabsi's business as "poker" or "gambling"-- scrutiny that would likely unearth the inadequacies in the substantiation of Mr. Alabsi's expenses.[12] Upon a review of the entire record, we are convinced that Mr. Alabsi did not have a separate consulting business and that the $20,045 reported on the 2009 return constituted part of Mr. Alabsi's gambling income for that year.

The record further demonstrates, however, that Mr. Alabsi's poker tournament winnings exceeded the $40,395 reported on the Forms W-2G. As

---

[12]On brief petitioners claim they never received the Forms W-2G reporting gambling income of Mr. Alabsi totaling $40,395 for 2009, but there is no sworn testimony to that effect.

reflected in our findings, the record demonstrates that Mr. Alabsi also won $2,209 on January 17, 2009, $832 on July 9, 2009, and $5,250 on August 2, 2009, that either was not reported to respondent or was not included in respondent's determination of unreported gambling income. On this record we find that Mr. Alabsi had poker tournament winnings of $48,686 for 2009.[13] Given our conclusion that petitioners reported $20,045 of Mr. Alabsi's gambling income on their return, it follows that they had unreported gains from wagering transactions of $28,641 for 2009.

## II. Whether Mr. Alabsi Was a Professional Gambler

Petitioners contend that Mr. Alabsi was engaged in the trade or business of gambling as a professional tournament poker player for 2009. Respondent contends that Mr. Alabsi's poker playing was neither carried on for profit nor conducted full time during 2009 and that it was thus a recreational activity. This distinction is important. If Mr. Alabsi was merely a recreational or casual gambler for 2009, his wagering losses, to the extent of wagering gains, would be deductible only as itemized deductions. Sec. 165(d); see also Rios v. Commissioner, T.C. Memo. 2012-128, aff'd, 586 F. App'x 268 (9th Cir. 2014); Heidelberg v. Commissioner, T.C. Memo. 1977-133. In that event, petitioners would not be

---

[13]Respondent has not argued that petitioners failed to report gambling winnings beyond those determined in the notice of deficiency.

entitled to deduct them, given that they claimed the standard deduction and that the entry fees and buy-ins they have substantiated do not exceed the standard deduction. On the other hand, if Mr. Alabsi was in the trade or business of gambling, his wagering losses are deductible to the extent of his wagering gains without regard to whether petitioners itemized, and his nonwagering expenses-- such as lodging and travel, assuming they are adequately substantiated--are fully deductible without regard to wagering gains. See Mayo v. Commissioner, 136 T.C. 81, 97 (2011).

Wagering activity is a trade or business if it "is pursued full time, in good faith, and with regularity, to the production of income for a livelihood, and is not a mere hobby". Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). We have generally analyzed whether wagering activities constitute a trade or business by considering whether the taxpayer engaged in the activities for profit within the meaning of section 183 and the regulations thereunder. See, e.g., Chow v. Commissioner, T.C. Memo. 2010-48, aff'd, 481 F. App'x 406 (9th Cir. 2012). Whether the taxpayer engages in an activity with the primary purpose of making a profit is a question of fact to be resolved on the basis of all the facts and circumstances in a particular case. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981); sec. 1.183-

2(a), Income Tax Regs. Although the test for whether a taxpayer engaged in an activity with the intention of making a profit takes into account the subjective intention of the taxpayer, we give greater weight to the objective facts than to the taxpayer's mere statement of intent. See sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of factors to be weighed when considering whether a taxpayer is engaged in an activity for profit. The relevant factors are: (1) the manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort the taxpayer expended in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other activities for profit; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, that are earned from the activity; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved in the activity. No one factor is determinative of whether an activity is engaged in for profit. Brannen v. Commissioner, 722 F.2d 695, 704 (11th Cir. 1984), aff'g 78 T.C. 471 (1982); Golanty v. Commissioner, 72 T.C. at 426; sec. 1.183-2(b), Income Tax Regs. Some of the factors do not apply or are neutral here.

Petitioners have substantiated that Mr. Alabsi participated in at least 29 poker tournament contests in 2009.[14] Many of the tournaments took place in Atlantic City and Las Vegas, each a substantial distance from petitioners' home. Mr. Alabsi won prizes in multiple poker tournaments every year from 2004 through 2010, and from late 2003 through 2010 he won a total of $858,447. At the time of trial Mr. Alabsi was listed as a notable player in an online Web site devoted to poker tournaments, along with records of his winnings. Moreover, petitioners did not receive income from any other source during 2009. We are convinced that Mr. Alabsi expended significant time and effort in carrying on his tournament poker activity during 2009 and has earned substantial revenue from it in other years.

Although Mr. Alabsi does not appear to have maintained records in a conventionally businesslike fashion, we have previously observed that "[t]he nature of gambling or other high-risk activities makes comparison to businesslike conduct of more traditional businesses difficult." Chow v. Commissioner, slip op. at 13. Furthermore, although Mr. Alabsi may not have performed research or gathered expert advice to prepare for poker tournaments, he exchanged tips and

---

[14]Petitioners have also demonstrated that Mr. Alabsi secured a position as an alternate in two additional tournament poker contests in 2009. See supra note 4.

ideas with fellow poker players. Having strategic consultations about poker with fellow players is suggestive of professionalism.

On the basis of all the facts and circumstances, we conclude and hold that Mr. Alabsi was engaged in gambling as a trade or business activity for 2009.

III.  Wagering Losses

The parties stipulated the authenticity of various receipts reflecting entry fees and buy-in amounts that Mr. Alabsi paid in 2009 to participate in poker tournaments. On brief respondent did not address or even acknowledged these receipts, while petitioners contend they are entitled to deduct the amounts reflected thereon. In addition, the Court reopened the record after trial to admit a statement from the Borgata listing Mr. Alabsi's payment of entry and buy-in fees for poker tournaments during 2009. As reflected in our findings, those entry and buy-in fees totaled $1,560 and $17,260, respectively.[15] The buy-in fees are clearly a direct cost of a wager, giving rise to a wagering loss that may offset wagering gains, because they are distributed to the winning players. We assume without deciding that the entry fees are likewise a direct cost of the wager giving rise to a wagering loss,

---

[15]Omitted from these totals are the entry and buy-in fees for tournaments where Mr. Alabsi won prize money, as those winnings (which we have determined are gambling income for petitioners for 2009) are stated net of the entry and buy-in fees. Mr. Alabsi's winning tournaments where the entry and buy-in fees are stated in our findings occurred on January 17, June 19, July 9, July 16, July 24, and August 2, 2009.

notwithstanding that they are retained by the casino sponsoring the tournament.[16]
After taking into account Mr. Alabsi's $18,820 in wagering losses from the entry
and buy-in fees petitioners have shown he paid during 2009, their unreported
gambling income is reduced to $9,821.

IV.    Business Expense Deductions

Deductions are a matter of legislative grace, and the taxpayer bears the
burden of proving entitlement to any deduction claimed on a return.  INDOPCO,
Inc. v. Commissioner, 503 U.S. at 84; New Colonial Ice Co. v. Helvering, 292 U.S.
435, 440 (1934).  Section 162(a) permits a deduction for ordinary and necessary
expenses paid or incurred during the taxable year in carrying on any trade or
business.  Welch v. Helvering, 290 U.S. 111, 113 (1933).  A professional gambler
is permitted to deduct both nonwagering gambling expenses related to the trade or
business of gambling and, subject to section 165(d), the cost of the wagers
themselves.  Mayo v. Commissioner, 136 T.C. at 97.  Generally, no deduction is
allowed for personal, living, or family expenses.  Sec. 262(a).

A taxpayer ordinarily must maintain adequate records to substantiate the
amounts of income and entitlement to any deductions claimed.  See sec. 6001; sec.

---

[16]Whether the entry fees are treated as a direct cost of the wager, deductible
only to the extent of wagering gains, or a nonwagering business expense that is not
a wagering loss makes no difference in this case as petitioners would be entitled to
deduct them in full in either event.

1.6001-1(a), Income Tax Regs. However, certain business expenses, including lodging or other traveling expenses and entertainment expenses, are subject to stricter substantiation requirements pursuant to section 274(d). That section and the regulations thereunder require a taxpayer to substantiate, by adequate records or by sufficient evidence corroborating the taxpayer's own statement, the amount, time and place, and business purpose of each expenditure. See sec. 274(d); sec. 1.274-5T(a), (b), and (c), Temporary Income Tax Regs., 50 Fed. Reg. 46014-46017 (Nov. 6, 1985). Additionally, if a taxpayer's business travel includes both personal and business activities, only the expenses related to the taxpayers' trade or business are properly deductible. See sec. 1.162-2(b)(1), Income Tax Regs.

Petitioners did not report any business expenses on the Schedule C attached to the 2009 return, but in their petition they contend they are entitled to business expense deductions that were not claimed.

The parties stipulated the authenticity of numerous hotel invoices issued to Mr. Alabsi. As reflected in our findings, we are satisfied that those hotel invoices, coupled with Mr. Alabsi's receipts for entry fees and buy-ins for poker tournaments on or about the same dates, satisfy the section 274 substantiation requirements for business travel in that they establish the amount, time and place, and business purpose of the expenditures for lodging when Mr. Alabsi participated

in poker tournaments. As our findings reflect, the hotel invoices also demonstrate that a portion of the hotel charges Mr. Alabsi paid covered in-room movies, spa services, and alcoholic beverages from the in-room refreshment center. Petitioners have not demonstrated a business purpose for the foregoing; we accordingly conclude that these were nondeductible personal expenditures.

In the aggregate, petitioners have substantiated that Mr. Alabsi paid business travel expenses for lodging at the hotel at the Borgata of $3,783.56 during 2009, $664.39 of which constituted nondeductible personal expenditures. They have further substantiated that Mr. Alabsi paid business travel expenses for lodging at the hotel at the Bellagio of $1,088 during 2009, $175 of which constituted nondeductible personal expenditures. Finally, they have substantiated that Mr. Alabsi paid a $40 baggage fee in connection with a return flight from a poker tournament in Las Vegas. Petitioners are accordingly entitled to deduct $4,072 of business expenses for 2009. As reflected in our findings, petitioners have not substantiated any business expenses in connection with Mr. Alabsi's stay at the Mountaineer hotel and, assuming he stayed at the Marriott Fallsview Hotel under his wife's name, they have not demonstrated that Mr. Alabsi participated in a poker tournament in connection with that stay that would give rise to any business expenses.

V.     Accuracy-Related Penalty

Section 6662(a) and (b)(1) imposes a 20% penalty for any underpayment attributable to negligence or disregard of rules or regulations. "'[N]egligence' includes any failure to make a reasonable attempt to comply" with the internal revenue laws. Sec. 6662(c). It connotates "a lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Freytag v. Commissioner, 89 T.C. 849, 887 (1987) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), aff'g 43 T.C. 168 (1964) and T.C. Memo. 1964-299), aff'd, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991). This includes "any failure by the taxpayer to keep adequate books and records or to substantiate items properly." Sec. 1.6662-3(b)(1), Income Tax Regs. Disregard of rules or regulations includes any careless, reckless, or intentional disregard of the Internal Revenue Code, the regulations, or certain Internal Revenue Service administrative guidance. Id. subpara. (2).

The Commissioner bears the burden of production with respect to a taxpayer's liability for penalties. Sec. 7491(c). To satisfy that burden, the Commissioner must offer sufficient evidence to indicate that it is appropriate to impose a penalty. See Higbee v. Commissioner, 116 T.C. 438, 446 (2001). If the Commissioner satisfies his burden of production, the taxpayer bears the burden of

proving it is inappropriate to impose the penalty because of any exculpatory factors. Id. at 446-447.

No penalty is imposed with respect to any portion of an underpayment if the taxpayer acted with reasonable cause and in good faith in regard to that portion. Sec. 6664(c)(1). That determination is made case-by-case, depending on the facts and circumstances. Those circumstances include the experience, knowledge, and education of the taxpayer. Sec. 1.6664-4(b)(1), Income Tax Regs. Reasonable reliance upon the advice of a tax professional may establish reasonable cause and good faith for the purpose of avoiding section 6662(a) penalties. Sec. 1.6664-4(c), Income Tax Regs.; see also Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). The professional advice "must be based upon all pertinent facts and circumstances and the law as it relates to those facts and circumstances." Sec. 1.6664-4(c)(1)(i), Income Tax Regs.

Respondent contends that petitioners are liable for an accuracy-related penalty on the basis of negligence. We agree. They failed to maintain records of Mr. Alabsi's gambling activities, including the related expenses. Lacking adequate records, they filed a return that reported an estimate of their net income as if it were gross receipts. As a consequence, they significantly understated both gross receipts and net income. They also participated in a misrepresentation of Mr.

Alabsi's business as being that of a consultant rather than a professional poker player. The failure to keep records is prima facie evidence of negligence, and the misrepresentation of the nature of Mr. Alabsi's business falls short of a reasonable effort to comply with the internal revenue laws. Respondent has therefore met his burden of production under section 7491(c).

Petitioners have not shown reasonable cause and good faith with regard to any portion of the underpayment. While they were advised in the preparation of their return by an accountant, the return as prepared stated a gross receipts figure that Mr. Alabsi certainly knew to be inaccurate and further identified the nature of his business in a way that both petitioners knew to be inaccurate. Petitioners have not shown that they acted with reasonable cause and in good faith with respect to any portion of the underpayment. They are liable for the negligence penalty under section 6662(a).

We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.